587 So.2d 154 (1991)
The FLAGSHIP CENTER, INC.
v.
The CITY OF NEW ORLEANS.
No. 90-CA-0813.
Court of Appeal of Louisiana, Fourth Circuit.
September 26, 1991.
*155 Ernest Lee Caulfield, Maruice A. Williams, New Orleans, for plaintiff-appellee.
Dan B. Zimmerman, Deputy City Atty., William D. Aaron, Jr., Chief Deputy City Atty., Okla Jones, II, City Atty., New Orleans, for defendant-appellant.
Before KLEES, BYRNES and WILLIAMS, JJ.
BYRNES, Judge.
The City of New Orleans, the Department of Finance of the City of New Orleans, and Paul C. Mitchell, Jr., the Director of Finance for the City of New Orleans (collectively "the City") appeal from the trial court's judgment requiring the City to either explain the purpose for differentiating between cable television owners and bingo hall owners with respect to restrictions on the frequency of bingo games, or to be enjoined from enforcing the frequency provision against bingo hall owners. We affirm.

*156 FACTS
On November 13, 1989, The Flagship Center, Inc. ("Flagship") requested a temporary restraining order prohibiting the City from enforcing one portion of Ordinance No. 6609, M.C.S., codified as Section 14-51 of the Code of the City of New Orleans, which limits the frequency of charitable bingo games held in any building to two per week. At the District Court hearing, Flagship recognized that it was not entitled to a temporary restraining order and accepted the court's recommendation that it file an amended petition.
Flagship then filed an amended petition, asserting that the Bingo Hall Ordinance discriminated against bingo hall owners because a similar ordinance, Section 19-63 of the City Code, allowed cable television bingo five days of operation per week.
The district court judgment stated in pertinent part that "The New Orleans City Council has forty-five days to explain the purpose for differentiating between cable television owners and bingo hall owners with respect to restrictions on the frequency of bingo games. Absent compliance with the forty-five day notices the City is enjoined from enforcing the frequency provisions as set out in Section 14-51. The City Council then amended Section 14-63 to provide that cable television bingo games would be limited to two days of operation per week. The City now appeals.

ASSIGNMENTS OF ERROR
The City maintains four assignments of error, contending that the trial court erred in: (1) finding an Equal Protection violation because commercial bingo hall owners and cable television bingo operators are not similarly situated entities; (2) finding an Equal Protection violation because there is sufficient justification for treating commercial bingo hall operators differently than cable television bingo operations; (3) finding that the distinction between bingo hall operators and cable television bingo operators was not a reasonable exercise of the City's police power; and (4) not finding the Flagship Center's claim premature because there is no cable television bingo.
In its first assignment of error, the City contends that the trial court erred in finding that commercial bingo hall operators and cable television bingo operators are similarly situated entities. The Louisiana Constitution, Art. 1, Section 3, guarantees the right to Equal Protection of the law for persons similarly situated. State v. Petrovich, 396 So.2d 1318 (La.1981); Valentine v. Thomas, 433 So.2d 289 (La.App. 1st Cir.1983) writ denied 440 So.2d 728 (La.1983). The City contends that the ordinances in question do not impose differing burdens on similarly situated persons and therefore do not implicate Equal Protection Rights. However, both bingo operators are similarly situated because they both rent their services to charitable organizations who then host bingo games. As the City states, there is a difference between playing cable television bingo and playing bingo in a bingo hall. However, for the owner who rents out his hall for profit and the cable television operator who rents out air time for profit, there is no difference. Both persons are renting their services, and therefore are similarly situated. Thus, this assignment has no merit.
In its second and third assignments of error, the City contends that there is a sufficient justification for treating commercial bingo hall operators differently than cable television bingo operators, and that this classification is a reasonable exercise of the City's police power. When there is no involvement of a suspect classification, traditional equal protection analysis sustains a classification if it is not arbitrary and bears a rational relationship to a legitimate state interest. Sibley v. Board of Supervisors, 477 So.2d 1094 (La.1985); State v. Petrovich, 396 So.2d at 1322. The legislature has a wide scope of discretion in enacting laws which effect some classifications of persons differently from others, and it is fundamental that a statutory enactment of the legislature is presumed to be constitutional. Id. The City relies on Theriot v. Terrebonne Parish, 436 So.2d 515 (La.1983), where the Louisiana Supreme Court upheld the constitutionality of a bingo ordinance which, like the City's *157 law, limited the frequency of bingo games in any one facility to two per week. The Court held that the limitation was "rationally related to the control of and supervision of such games in the parish and does not offend the constitutional guarantees of substantive due process." Id. at 521. However, in this case the issue is not whether the City has a legitimate interest in regulating the frequency of bingo games, which it does, but whether the City has a legitimate interest in discriminating against certain types of bingo operators, thus allowing the City to regulate the bingo operators differently.
Then-Councilman Ciaccio, a sponsor of the charitable bingo ordinance of 1977, stated that the purpose of limiting charitable bingo in any one building is to prevent the building from being used solely for bingo, thus becoming a gambling facility, rather than an ancillary to the charitable activities. City Council Hearing on M.C.S. 6609, Calendar No. 7003. Then-Councilman Barthelemy, a sponsor of the establishment of cable television bingo operations, stated that:
"I wanted to make sure that nobody would form a non-profit organization simply to operate a video-bingo so they can generate a lot of money for their own pockets.... The administrative expense would be to pay for the Cable TV Channel, to buy the cards, equipment and those kinds of necessary things." City Council Hearing to Amend Chapter 14, Ordinance 828 MCS, Calendar No. 11, 978.
Thus, the council records reflect two interests. The first interest is to inhibit a bingo facility from becoming a gambling facility, rather than ancillary to the charitable activities. The second interest is to inhibit the bingo facility operator from generating high profits. Both these interests are legitimate to the City's police power. Theriot, supra.
The City's action, placing a maximum limit on the amount of games held per week by bingo facilities, is rationally related to achieving both above interests. However, the City's action favoring the amount of games held per week at Cable TV facilities over hall facilities, does not rationally relate to achieving the above interests. The City's ordinance favoring Cable TV operators allows them five nights of bingo per week instead of two, at twenty games a night, or one hundred games per week. Also, the City's ordinance allows the Cable TV operators an extra three nights of rental profit per week over hall operators. Since the discrimination against hall bingo operators on the amount of games and amount of profits does not rationally relate to a legitimate government interest, this classification is a violation of the right to Equal Protection guaranteed under the Louisiana Constitution. Thus, this assignment of error has no merit.
In its fourth assignment of error, the City contends the suit by Flagship is premature. Prematurity is determined by the state of facts existing at the time the suit is brought. Edleman v. McCann, 471 So.2d 268 (La.App. 4th Cir.1985). At the filing of this suit, the City has enacted an ordinance which discriminated in favor of Cable TV Bingo operators. M.C.S. No. 6609, Section 14-51, Municipal Code of the City of New Orleans. This ordinance gave rise to the Equal Protection violation alleged by Flagship in the petition. Thus, this suit was not brought prematurely by Flagship. This suit was a result of the violation of their constitutional rights. Therefore this assignment has no merit.
In conclusion, the trial court did not err in its judgment ordering the City to amend either one of both of the ordinances in question so as to bring them in compliance with the right to Equal Protection under the Louisiana Constitution. We affirm the judgment of the trial court with costs assessed to the City.
AFFIRMED.
WILLIAMS, J., dissents with reasons.
WILLIAMS, Judge, dissenting.
I respectfully dissent. The majority has mischaracterized the trial court's judgment. The majority seems to believe that the trial court's judgment ordered the City *158 to amend either one or both of the ordinances. In fact, the trial court issued a preliminary injunction ordering the City "to explain the purpose for differentiating between cable television owners and bingo hall owners with respect to restrictions on the frequency of bingo games." The trial court ordered that, absent compliance within forty-five days, the City should be enjoined from enforcing the frequency provision as set out in Ordinance 6609, M.C.S. Codified as Section 14-51 of the Code of the City of New Orleans.
Instead of complying with the judgment, the City appears to have followed a suggestion in the trial court's reasons for judgment that it amend either the above ordinance or Ordinance 10035, M.C.S. Codified as Section 14-63 of the Code of City of New Orleans. It chose to amend the former to provide the exact frequency limitation as the latter. As such, its argument that a five day per week frequency limitation on bingo games broadcast by would-be cable television bingo operators is not violative of equal protection appears moot, since such operators are now, by ordinance, allowed only to operate two days per week just as hall owners are limited.
Additionally, the majority's holding, that bingo hall operators and cable television bingo operators are similarly situated because they both rent their facilities for profit, is strained at best. If the majority's holding were correct, all commercial entities in our economy would be similarly situated since all commercial entities are presumably operated for the purpose of earning a profit.
Next, I believe that there is a sufficient justification for treating commercial bingo hall operators differently than cable television bingo operators and that this classification is a reasonable exercise of the City's police power. Notably, bingo halls have an impact on road use, traffic congestion, zoning ordinances, and noise levels in potential residential areas that is wholly lacking in the situation of a cable television operator that uses the airways to transmit bingo games directly into the residences of players. Moreover, the task of monitoring cable television operations to determine whether revenues are in fact accruing to charitable organizations, a major concern of the City Council as set out by the majority, is an obviously easier one than the monitoring of a multitude of bingo hall operators spread out citywide.