652 So.2d 1038 (1995)
INTER URBAN BAR ASSOCIATION OF NEW ORLEANS, INC.
v.
The CITY OF NEW ORLEANS, et al.
No. 93-CA-1006.
Court of Appeal of Louisiana, Fourth Circuit.
March 16, 1995.
*1040 Christopher G. Young, Inc., Christopher G. Young, New Orleans, for plaintiff-appellant.
Ann M. Sico, Asst. City Atty., Greg Guth, Deputy City Atty., and Kathy Lee Torregano, City Atty., New Orleans, for defendantappellee.
Tulane Environmental Law Clinic, Steven Michael Staes, Student Atty. and Daria Burgess Diaz, Supervising Atty., New Orleans, for defendant-appellee.
Before BARRY, PLOTKIN and JONES, JJ.
BARRY, Judge.
The Inter Urban Bar Association of New Orleans, Inc. (approximately twenty-two neighborhood lounge owners) filed a petition for a permanent injunction to restrain the City of New Orleans from enforcing Section 46-1 of the City Code of New Orleans, and for a declaratory judgment that the ordinance (with attendant tax consequences) is unconstitutional, and for damages. The Mississippi River Bottom Company intervened in support of the Association, and the Association of Residents of Treme intervened in support of the City.
The trial court held Section 46-1 constitutional and dismissed the petition. The Inter Urban Bar Association's appeal asserts that Section 46-1 violates due process because it is unconstitutionally vague and violates equal protection rights because it arbitrarily distinguishes between establishments that provide live entertainment and those that do not. We hold that Section 46-1 of the City Code is constitutional and affirm.

Due Process
The Inter Urban Bar Association asserts that Section 46-1 is unconstitutionally vague because it does not contain a standard for uniform application and leaves the determination of when a permit should be granted or denied to the whim of governing officials. The Association argues that a permit is required for "live entertainment" in certain zoning districts but that the City Code does not define "live entertainment."
An ordinance is presumed constitutional unless it interferes with the exercise of fundamental personal rights or is drawn upon inherently suspect distinctions such as race or religion. West Central Louisiana Entertainment, Inc. v. City of Leesville, 594 So.2d 973, 975 (La.App. 3rd Cir.1992). Section 46-1 does not involve a fundamental right or suspect classification. Inter Urban Bar Association must establish by clear and cogent evidence that it is unconstitutional. West Central Louisiana Entertainment, Inc., 594 So.2d at 975.
The Association challenges the ordinance under La. Const. art. 1, § 2 (1974). A law may be impermissibly vague if it does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly or if it does not provide a standard to prevent arbitrary and discriminatory application. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497-99, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982).
The Louisiana Supreme Court has applied those principles to zoning ordinances. A zoning ordinance which contains no standard for the uniform exercise of the power to grant or deny an application for a permit is constitutional. Morton v. Jefferson Parish Council, 419 So.2d 431, 434 (La.1982); Summerell v. Phillips, 282 So.2d 450, 453 (La.1973). The ordinance must be sufficiently definite to notify citizens of their rights pursuant to the ordinance and must establish adequate standards to guide officials in the uniform treatment of applications for permits. Morton, 419 So.2d at 434; Summerell, *1041 282 So.2d at 453. See Tiber Petroleum, Inc. v. Parish of Jefferson, 391 So.2d 1178 (La. 1980).
Section 46-1 sufficiently notifies citizens of the regulated activity. To sustain such a challenge, the plaintiffs must show that the ordinance is vague "not in the sense that it requires a person to conform ... to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." Village of Hoffman Estates, 455 U.S. at 495, n. 7, 102 S.Ct. at 1191, n. 7. The Association did not meet its burden.
Section 46-1 requires a permit for the regulation of specified economic activity. Once a permit is obtained, the permit holder might be subject to an amusement tax under Section 6-1 of the City Code, which applies to:
any nightclub, cabaret, dance, dancehall, restaurant which provides either floor show, singing, dancing or dancing facilities to patrons;....
Section 46-1 regulates business activity, including some forms of entertainment, but does not specify "live entertainment:"
Every person who shall desire to use the public streets, sidewalks or public places or private places of business establishments for the conduct of any of the businesses or callings hereinafter set forth or to hold meetings or rallies or public entertainment in private or public halls or places shall first apply to and obtain from the Department of Finance a permit....
(29) For orchestras in restaurants or business establishments for purposes of entertainment or dancing when no admission is charged....
(30) For music other than an orchestra for entertainment purposes or dancing when no admission is charged or fee exacted.
. . .
(31) For music for entertainment purposes or dancing where admission is charged or fee exacted in any manner.... [Emphasis added.]
Paragraphs (29), (30), and (31) of Section 46-1 require a permit for music for entertainment purposes or dancing. "Live entertainment" is not in Section 46-1 and is not defined in the Comprehensive Zoning Ordinance. The term is not used in City Code Section 6-1, the amusement tax section.
Words and phrases shall be read within their context and shall be construed according to common and approved usage. La.R.S. 1:3. In its ordinary usage, "entertainment" is something that diverts or amuses. See Webster's Third New International Dictionary, p. 757 (1971). A live band or a disc jockey that interacts with the patrons and provides music through an electronic entertainment system clearly falls under Section 46-1. Indeed, the Association does not claim its businesses are not covered by the law, but rather, it implicitly recognizes that its businesses are included in the ordinance. Therefore, the ordinance is not impermissibly vague.
The ordinance provides sufficient guidance for its uniform application.
In Summerell, supra, the Supreme Court struck down an ordinance that allowed for the establishment of a mobile home district if the council adopted an amendment to the comprehensive zoning ordinance. The ordinance was held unconstitutional because it did not set forth an objective standard for adoption of the amendment and it gave the City-Parish Council "absolutely free, unfettered and unguided discretion to grant or deny applications for ... zoning amendments." Id. at 453.
The Court in Tiber Petroleum, supra, held an ordinance unconstitutional which required an "ordinance of no objection" from the council before storage and refining of petroleum products would be allowed in an area zoned as a heavy industrial district. The challenged ordinance did not contain any criteria for approval or disapproval of the affected facilities.
The challenged ordinance in Morton, supra, allowed the council to grant a permit when it "is satisfied that granting approval will not seriously affect any adjoining property or the general welfare." The Supreme Court held that language "(i)nsufficient to remove the decision of whether to grant or deny applications from the council's unbridled *1042 discretion," and held the ordinance unconstitutional. Id. at 435.
Section 46-1 when applied in conjunction with the City's Comprehensive Zoning Ordinance is distinguishable from the above cited cases because it specifies the regulated activities with sufficient clarity to remove the decision of whether to grant a permit from the governing officials' unbridled discretion.
The lack of a definition for "live entertainment," a term not included in Section 46-1, does not render the ordinance so unclear as to place its application at the subjective whim of the governing authority. Section 46-1 clearly states the regulated activity and includes music for entertainment or dancing. The Association's argument has no merit.

Equal Protection
The Inter Urban Bar Association asserts that Sections 46-1 violates equal protection because it treats similarly situated persons differently. They argue that the ordinance requires a permit (and attendant tax consequences) for a business establishment that provides music by a disc jockey but not for a business that provides taped music monitored by a bartender or person other than a disc jockey. The Association does not attack the constitutionality of City Code Section 6-1 which levies the amusement tax. Their contention appears to be that they would not be subject to the amusement tax if they were not required to obtain a permit under Section 46-1.
When there is no involvement of a suspect classification, traditional equal protection analysis sustains a classification if it is not arbitrary and bears a rational relationship to a legitimate state interest. Sibley v. Board of Supervisors, 477 So.2d 1094, 1107 (La.1985); Flagship Center, Inc. v. City of New Orleans, 587 So.2d 154, 156 (La.App. 4th Cir.1991). The legislature has wide discretion in enacting a law which draws some classification of persons. Flagship Center, Inc., 587 So.2d at 156. Where taxation is concerned and no specific federal right is imperiled, the states have large leeway to establish classifications and draw lines which produce a reasonable system of taxation. Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 357-59, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351 (1973).
The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective. A statutory discrimination will not be set aside if any facts may reasonably justify it. Louisiana Horticulture Commission v. Kuharcik, 335 So.2d 56, 58 (La.App. 4th Cir.), writ refused, 338 So.2d 702 (La.1976).
The Association argues that the classification in Section 46-1 which requires a permit (and attendant taxes) for live entertainment such as a disc jockey does not further a legitimate state interest.
In support of its claim for injunctive relief, the Association filed a partial deposition (from an unrelated case) of Paul May, Director of the Department of Safety and Permits, who stated that a permit is required for a disc jockey because the disc jockey interacts with the patrons.[1] That interaction enhances the entertainment function of the music since the patrons may be expected to become more engaged in the music, the person providing the music, and the surroundings. Consequently, the noise level, traffic flow and trash problems encountered by neighborhood residents near such an establishment may be expected to increase. A conceivable government interest for requiring a permit by a business that provides music for entertainment or dancing in certain zoning districts is promotion of the health, safety, peace and general welfare of its citizens, including those residents.
Further, City Code Section 6-1 states that the amusement tax is levied
for the purpose of providing funds for public and quasi-public charitable institutions operated by the Department of Welfare and, in the event of a surplus of such funds, to human services programs....
Taxing business and entertainment establishments which have a greater impact on *1043 public amusement reasonably furthers the government's interest in providing funds for public charitable institutions.
Considering that an establishment which provides music for entertainment (such as through a disc jockey who interacts with the patrons) can be expected to impact the factors listed above, Section 46-1 rationally relates to a legitimate government interest and does not violate constitutional equal protection rights.
The judgment is affirmed.
AFFIRMED.
JONES, Judge, dissenting.
Because the challenged ordinance fails to provide a definition for the term "live entertainment", enforcement of the ordinance is left to the whim of the City. The City's Zoning Administrator readily admitted that no written standards or rules existed to inform applicants of the requirements to be met in defining "live entertainment". Consequently, applicants are reduced to relying upon counter personnel to make a determination as to whether "live entertainment" is being provided. This total lack of standards in the ordinance makes the ordinance impermissibly vague in its application; thus the ordinance offends the due process provisions of Article 1, Section 2 of the Louisiana Constitution of 1974.
Moreover, because the ordinance is being interpreted to differentiate between establishments that provide taped music by way of a disc jockey and establishments that provide the same taped music by way of a person other than a disc jockey, the ordinance also offends the equal protection guarantees of Article 1, Section 3 of the Louisiana Constitution of 1974. The record contains no evidence to support the contention that a valid distinction exists for treating such establishments differently.
For these reasons, I would reverse the judgment of the trial court. Accordingly, I dissent.
NOTES
[1] It is not clear whether Mr. May's deposition was filed into evidence.