680 So.2d 149 (1996)
Anthony J. VOGT, et al,
v.
BOARD OF LEVEE COMMISSIONERS OF the ORLEANS LEVEE DISTRICT and Bass Enterprises Production Company.
Allen M. EDGECOMBE, et al,
v.
BOARD OF LEVEE COMMISSIONERS OF the ORLEANS LEVEE DISTRICT and Bass Enterprises Production Company.
No. 95-CA-1187.
Court of Appeal of Louisiana, Fourth Circuit.
September 4, 1996.
*151 Barham & Arceneaux, PLC, Mack E. Barham, Robert E. Arceneaux, Julia C. Symon, New Orleans and Philip A. Gattuso, Gretna, for Plaintiffs-Appellants.
McQuaig & Solomon, Scott W. McQuaig, Barbara M. Kantrow, Metairie and Uddo & Milazzo, Frank J. Uddo, Basile J. Uddo, Anthony J. Milazzo, Jr., Metairie and Middleberg, Riddle & Gianna, Paul J. Mirabile, Ronald J. Vega, New Orleans, for Defendant-Appellee, Board of Commissioners of Orleans Levee District.
*152 Carver, Darden, Koretzky, Tessier, Finn, Blossman & Areaux, L.L.C., M. Hampton Carver, John Anthony Dunlap, David L. Browne, New Orleans, Amicus Curiae, Bass Enterprises Production Company.
Before BARRY, KLEES and WALTZER, JJ.
BARRY, Judge.
On May 3, 1993 a number of Bohemia Spillway former owners and their heirs (the Edgecombe plaintiffs) to whom title was transferred in 1991 and 1992 filed suit in Plaquemines Parish against the Board of Commissioners of the Orleans Levee District and Bass Enterprises Production Company, a mineral lessee. Bass paid royalties to the Levee Board until individual acts of transfer were passed in 1991 and 1992 to return the property which had been expropriated. Plaintiffs sought a declaratory judgment decreeing ownership of the property, plus fruits and revenues as of June 29, 1984 (the effective date of Act 233 of 1984), an accounting of all revenues from that date, a money judgment for the amount of royalties incorrectly paid to the Levee Board after June 29, 1984, damages double the amount of the royalties and attorney's fees, and dissolution of the Bass lease. On September 2, 1993 a number of plaintiffs (Vogt) filed a similar petition for declaratory and money judgments in Plaquemines Parish. In both actions the Levee Board and Bass filed declinatory and dilatory exceptions including improper venue which were overruled.
The Levee Board and Bass filed here for supervisory review in Edgecombe. This Court reversed as to the venue exception and remanded for proceedings in Orleans Civil District Court. Edgecombe et al. v. Board of Commissioners of the Orleans Levee District et al., 94-0202, 94-0203 (La.App. 4 Cir. 3/9/94)(unpublished). In Vogt all parties entered into a consent judgment to transfer the matter to Orleans Parish.
In Vogt and Edgecombe Bass subsequently filed no cause of action exceptions which were maintained and the proceedings as to Bass were dismissed. The Edgecombe and Vogt plaintiffs appealed. This Court consolidated the cases and affirmed. Edgecombe et al. and Vogt et al. v. Board of Commissioners, 94-1493 c/w 94-1554 (La.App. 4 Cir. 2/23/95), 650 So.2d 1249, writ pending (La.5/12/95), 654 So.2d 345.
The Levee Board filed a no cause of action exception which was maintained and the claims were dismissed without reasons. The Vogt and Edgecombe plaintiffs filed a notice of appeal and for supervisory review at the Supreme Court because of a writ pending from this Court's affirmance of Bass' exception of no cause of action. The Supreme Court granted the writ application and transferred it to this Court for treatment as an appeal and deferred action on the other application pending this Court's disposition of this appeal.[1]Edgecombe et al. v. Board of Commissioners of New Orleans Levee District c/w Vogt et al. v. Board of Commissioners of New Orleans Levee District, 95-1142 (La.5/12/95), 654 So.2d 345.

HISTORY
Pursuant to 1924 La. Acts, No. 99, § 2, the Orleans Parish Levee Board expropriated 33,000 acres of land known as the Bohemia Spillway in 1924-1926 to create a natural spillway which would protect the city of New Orleans from high water in the Mississippi River. Article VII, § 14(A) of the 1974 Constitution prohibited pledging or donating property of the state or any political subdivision, but an amendment to § 14(B) in 1983 set forth an exception for:
(4) the return of property, including mineral rights, to a former owner from whom the property had previously been expropriated, or purchased under threat of expropriation, when the legislature by law declares that the public and necessary *153 purpose which originally supported the expropriation has ceased to exist and orders the return of the property to the former owner under such terms and conditions as specified by the legislature....
The legislature then passed Act 233 of 1984 (effective June 29, 1984), which provided:
Section 1. Pursuant to authority of Louisiana Constitution Article VII, Section 14(B), the Legislature of Louisiana hereby declares that the public and necessary purpose set forth in Act No. 99 of 1924, which may have originally supported the expropriation of property, or any right of ownership thereto, on the east bank of the Mississippi River in the parish of Plaquemines for the construction of a spillway, known as the Bohemia Spillway, has ceased to exist insofar as it ever may have affected the ownership of property, including mineral rights. The Legislature of Louisiana hereby orders the Board of Levee Commissioners of the Orleans Levee District, the board, to return the ownership of said property to the owners or their successors from whom the property was acquired by expropriation or by purchase under threat of expropriation. Neither the provisions of this Act nor any actions pursuant to this Act shall affect the title to land which was the subject of litigation on the effective date of this Act.
Section 2. The secretary of the Department of Natural Resources shall have rule making and procedure making authority consistent with the Administrative Procedure Act, R.S. 49:950, et seq., for the purpose of establishing procedures and guidelines for the receipt and evaluation of applications, notification of applicants, review of denials by hearings, relaxation of technical rules of evidence, settlement and distribution of funds for successful applications, and any other rules and procedures reasonably necessary for the orderly implementation of the return ordered herein. The secretary shall proceed immediately upon the effective date of this Act with steps necessary for the development and adoption of rules and procedures to begin the implementation of the provisions of this Act by January 1, 1985.
Section 3. The Board of Levee Commissioners of the Orleans Levee District shall provide a thorough accounting to the secretary of the Department of Natural Resources, or his designee, concerning all revenues received from the affected property. The information so provided shall be made available to applicants. The board shall comply with the spirit and letter of the rules and regulations adopted and promulgated by the secretary of the Department of Natural Resources.
Section 4. The secretary of the Department of Natural Resources shall begin steps by January 1, 1985, to notify affected persons.
Section 5. The return of property by the board to the owners or their successors shall be subject to all servitudes and rights-of-way, whether acquired by expropriation or otherwise, or surface or mineral leases, or other valid contracts executed by or with the board prior to the effective date of this Act. Any deed whereby any property is returned shall state that such property is subject to such rights. Any party to a contract in effect on the effective date of this Act with the board concerning property affected by this Act shall be entitled to make payments and give all notices required or permitted under such contract to the secretary until the title to the property affected has been transferred. When such contracts provide for renegotiation of rent between any person and the board, or provide that any person may seek approval by the board, such person shall be entitled to renegotiate such rent or to seek and obtain such approval from the secretary until the title to the property affected has been transferred. Any sum deposited with the secretary pursuant to this Act which represents rent, royalty or other sum attributable to land being returned, shall be paid by the secretary to the appropriate persons.
Section 6. This Act shall become effective upon signature by the governor or, if not signed by the governor, upon expiration of the time for bills to become law *154 without signature by the governor, as provided in Article III, Section 18 of the Constitution of Louisiana.
Approved by the Governor: June 28, 1984.
The Louisiana Supreme Court upheld the constitutionality of Act 233 against attack by the Levee Board. Board of Commissioners of Orleans Levee District v. Department of Natural Resources, 483 So.2d 958 (La.1986), on rehearing, 496 So.2d 281 (La.1986). The Levee Board also attacked Act 233 unsuccessfully in federal court. See Board of Levee Commissioners of the Orleans Levee Board v. Huls, 852 F.2d 140 (5th Cir.1988).
Act 819 of 1985 provided:
Section 1. Sections 2,4, and 5 of Act 233 of the 1984 Regular Session are hereby amended and reenacted to read as follows:
Section 2. The secretary of the Department of Natural Resources shall have rulemaking and procedure making authority consistent with the Administrative Procedure Act, R.S. 49:950, et seq., for the purpose of establishing procedures and guidelines for the receipt and evaluation of applications, notification of applicants, submission of evidence as to applicants' rights to property within the Bohemia Spillway, certification of applications, in whole or part, and any other rules and procedures reasonably necessary for the orderly implementation of the return ordered herein. The secretary shall proceed immediately upon the effective date of this Act with steps necessary for the development and adoption of rules and procedures to begin the implementation of the provisions of this Act by January 1, 1985.
* * * * * *
Section 4. The secretary of the Department of Natural Resources shall certify, in writing, to the board valid applications in accordance with the regulations to be adopted hereunder. The board shall, within sixty days of the receipt of a certification from the secretary, take action to return the ownership to persons or corporations certified as owners or successors to owners from whom the property was acquired by expropriation or by purchase under threat of expropriation. The secretary and any applicant, whose claims were the subject of the secretary's certification, shall be notified in writing of the board's action. Any applicant who is aggrieved by the board's action on the secretary's certification may seek judicial review of the board's action by filing suit in the Twenty Fifth Judicial District Court within thirty days of receipt of the written notice provided herein.
Section 5. The return of property by the board to the owners or their successors shall be subject to all servitudes and rights-of-way, whether acquired by expropriation or otherwise, or surface or mineral leases, or other valid contracts executed by or with the board prior to the board's action taken pursuant to Section 4 of this Act. Any deed whereby any property is returned shall state that such property is subject to such rights.
Section 2.[sic] This Act shall become effective upon signature by the governor or, if not signed by the governor, upon expiration of the time for bills to become law without signature by the governor, as provided in Article III, Section 18 of the Constitution of Louisiana.
Approved by the Governor: July 22, 1985.
Act 847 of 1992 amended and reenacted Section 1 of Act 233 of 1984[2]:
Pursuant to authority of Louisiana Constitution Article VII, Section 14(B), the Legislature of Louisiana hereby declares that the public and necessary purpose set forth in Act 99 of 1924, which may have originally supported the expropriation of property, or any right of ownership thereto, on the east bank of the Mississippi River in the parish of Plaquemines for the construction *155 of a spillway known as the Bohemia Spillway, has ceased to exist insofar as it ever may have affected the ownership of property, including mineral rights. The Legislature of Louisiana hereby orders the Board of Levee Commissioners of the Orleans Levee District, the board, to return the ownership of said property to the owners or their successors from whom the property was acquired by expropriation or by purchase under threat of expropriation, act of convenience, or otherwise, including but not limited to sale or transfer subsequent to an adjudication for the nonpayment of taxes.

JURISPRUDENCE
The purpose of the exception of no cause of action is to determine the legal sufficiency of the petition. The exception is triable on the face of the petition and well-pleaded facts must be accepted as true. The burden is on the exceptor. In reviewing a trial court's ruling on the exception, the appellate court should conduct a de novo review. A petition should not be dismissed for failure to state a cause of action unless it appears beyond a doubt that the plaintiff cannot prove facts in support of any claim which would entitle him to relief. "The question therefore is whether in the light most favorable to plaintiff, and with every doubt resolved in his behalf, the petition states any valid cause of action for relief." City of New Orleans v. Board of Commissioners of Orleans Levee District, 93-0690 (La.7/5/94), 640 So.2d 237, 253. See also Edgecombe, 650 So.2d at 1250-51.
When the law is clear and unambiguous and its application does not result in absurd consequences, it shall be applied as written and no interpretation may be made in search of the legislature's intent. La. C.C. art. 9; Daigrepont v. Louisiana State Racing Commission, 95-0539 (La.App. 4 Cir. 10/2/96), 663 So.2d 840, writ denied, 95-2828 (La.2/2/96), 666 So.2d 1085. When a statute is clear the court must give credence to the mandate expressed by the legislature and cannot resort to construing a statute based on the spirit of the law as opposed to the plain wording of the law. Longman v. Allstate Insurance Company, 93-0352 (La.App. 4 Cir. 3/29/94), 635 So.2d 343. A statute shall be construed to give meaning to the plain language of the statute. State, Department of Transportation and Development v. Walker, 95-0185 (La.6/30/95), 658 So.2d 190.
Courts should avoid a construction which would lead to absurd results. Statutes must be interpreted in such a manner as to render their meaning rational, sensible and logical. State through Department of Public Safety and Corrections, Office of State Police, Riverboat Gaming Division v. Louisiana Riverboat Gaming Commission and Horseshoe Entertainment, 94-1872 (La.5/22/95), 655 So.2d 292. Words and phrases shall be read within their context and shall be construed according to common and approved usage. La. R.S. 1:3. Inter Urban Bar Association of New Orleans, Inc. v. City of New Orleans, 93-1006 (La.App. 4 Cir. 3/16/95), 652 So.2d 1038. The law requires a fair and genuine construction of a legislative act, a reasonable construction in light of the act's purpose. Louisiana Health Service & Indemnity Company v. Tarver, 93-2449 (La.4/11/94), 635 So.2d 1090.
If the legislative language is unclear it must be interpreted according to the meaning that best conforms to the purpose of the law. The paramount consideration is ascertaining the legislative intent and reasons that prompted the legislature to enact the law. La. C.C. art. 10; Garrett v. Seventh Ward General Hospital, 95-0017 (La.9/25/95), 660 So.2d 841. See also 3 Sutherland on Statutory Construction § 58.01 (5th ed.1993). When the wording is susceptible to different meanings it is necessary to ascertain legislative intent. The title or preamble of the act may be used to determine legislative intent. Matter of American Waste and Pollution Control Company, 93-3163 (La.9/15/94), 642 So.2d 1258. When the literal construction of a statute produces unreasonable results, the letter must give way to the spirit of the law and the act must be construed to produce a reasonable result. To ascertain the true meaning of a word, phrase or section, the act as a whole must be considered. Green v. Louisiana Underwriters Insurance Company, 571 So.2d 610 (La. *156 1990). Unjust results should be avoided and if possible statutes should be construed to apply equally to all persons similarly situated. Guste ex rel. Courville v. Burris, 427 So.2d 1178 (La.1983).
Repeals by implication are not favored in the law. The legislature is presumed to intend to achieve a consistent body of law. Roby v. Board of Trustees of Employees' Retirement System of City of New Orleans, 94-0671 (La.App. 4 Cir. 1/31/96), 650 So.2d 811. When proposed legislation conflicts with existing law, the conflict should not be left to resolution by the courts. Wherever possible, conflicting sections of the prior statute should be identified by specific reference and expressly repealed. 1A Sutherland on Statutory Construction § 20.25 (5th ed.1993). The problem of determining the extent to which existing legislation is repealed by a subsequent act ultimately involves a consideration of statutory construction. A court should give a harmonious effect to all acts on a subject when reasonably possible. However, that is not possible when two acts are clearly irreconcilable and repugnant as to essential matters relating to the acts and are so inconsistent that they cannot operate concurrently. State v. Piazza, 596 So.2d 817 (La.1992), reh'g granted in part, 91-2256 (La.4/30/92). To determine whether a repeal has been effectuated the court must consider the environment, association and character of the legislation in its field of operation, the history of previous legislation, the legislative history of the amending or repealing act, and the nature of the defect sought to be remedied. Sutherland at § 23.06. Those provisions of an earlier act or section which are irreconcilable with provisions of an amendatory act are impliedly repealed. All matter that is omitted in the amended act is considered repealed. Id. at § 23.12.

ARGUMENT AND ANALYSIS
The plaintiffs argue that Act 233 of 1984 was self-operating and divested the Levee Board of all rights of ownership over lands in the Bohemia Spillway.[3] Their petitions allege that as of Act 233's effective date the Levee Board was divested of any interest in the property and the landowners became vested with all rights including mineral rights and had the right to receive title to the property subject to the Bass mineral lease. The Levee Board counters that ownership of the lands and revenues did not transfer to the former owners and their heirs until different dates in 1991 and 1992 when title was transferred by the Board to each individual pursuant to Act 233 of 1984 as amended by Act 819 of 1985 and Act 847 of 1992.
The provisions of La. Const. Art. VII, § 14(B)(4) allowed the return of property and mineral rights to former owners of expropriated lands "when the legislature declares that the public and necessary purpose... has ceased to exist." The State's power to expropriate is limited by the public purpose doctrine. Melvin Dakin and Michael Klein, Eminent Domain in Louisiana, § 1 (1970). In Section 1 of Act 233 of 1984 the legislature clearly declared that the public and necessary purpose for the expropriation of the Bohemia Spillway lands had ceased and ordered the Levee Board to return ownership to the former landowners or their successors. In Section 6 the legislature made the act effective upon the governor's signature.
Section 2 states that the Department of Natural Resources (DNR) had authority to establish procedures for the application process and "settlement and distribution of funds for successful applications ...," a reference to amounts of revenues paid after the effective date of Act 233. The DNR secretary was ordered to proceed immediately upon the effective date of the act (June 29, 1984) with the development of procedures to begin implementation of Act 233 by January 1, 1985, which clearly evidenced an intent that the act was effective as of June 29, 1984 and return of the property was to be carried out quickly.
*157 Under Section 3 the Levee Board had to provide a "thorough accounting" to the DNR secretary or his designee concerning "all revenues" from the property and that was to be made available to the applicants. "Accounting" has been defined as an act or system of making up or settling accounts or a rendition of an account. If by order of a court it imports a rendition of a judgment for the balance due. The term may include payment of the amount due. Black's Law Dictionary (5th ed.1979). Under a reasonable reading of the act, if an "accounting" did not encompass payment of the royalties, an accounting was necessary only if the revenues were to be distributed to former landowners; it served no other purpose.
Section 5 provided that return of the property would be subject to all servitudes, mineral leases or other contracts executed by or with the Levee Board prior to Act 233's effective date. Lessees were entitled to negotiate with or make payments to the DNR until title passed. Implicit was the notion that the Levee Board had no legal right to lease the property, accept royalties or negotiate contracts after June 29, 1984. Section 5 also provided that all monies from royalties or rents attributable to property being returned "shall be paid by the [DNR] secretary to the appropriate persons," a clear reference to the landowners/heirs' right to royalties earned after the act's effective date which were paid to DNR.
Act 233 ordered that expropriated lands be returned.[4] The Levee Board had no right to revenues from the expropriated property after the legislature declared in Act 233 that a public and necessary purpose no longer existed. The act required an accounting of the royalties earned after June 29, 1984. The different sections of the act read as a whole in pari materia declare that the Levee Board not retain the property and its revenues as of the effective date of Act 233.[5]
However, if the language of Act 233 is considered unclear, the reasonable construction in light of the act's purpose is that the legislature intended to implement La. Const. Art. VII, § 14(B) and return the property to the former owners or their heirs, who had been deprived of revenues from the lands since the 1920s. The preamble or title of Act 233 stated its purpose was to declare that the public and necessary purpose had ceased to exist and to order the return of certain property, including mineral rights, acquired by expropriation. The legislators could not return the property; the legislative intent was to order the Board, which had expropriated the lands, to return them. The legislators were aware that titles could not be transferred immediately, but nothing in Act 233 evidenced an intent that the Levee Board retain the property and the revenues generated during the application process.[6]
The Levee Board, which received mineral revenues of $3 million in 1986 from the expropriated lands, constitutionally attacked Act 233 in state court, but the act was held constitutional. The Louisiana Supreme Court noted that Art. VII, § 14(B)(4) was not self-operating and discussed Act 233 as comporting *158 with specific requirements of the constitutional amendment, "which it was enacted to implement." Board of Commissioners, 483 So.2d at 967. The Court declared that by Act 233 the legislature "attempted to return land known as the Bohemia Spillway to the owners ...," Id. at 959, and stated: "The Legislature was free to return the Bohemia Spillway property under La. Const. art. VII, 14(B)(4) and they chose to do so when they passed Act 233 of 1984." Id. at 969.
On rehearing the Supreme Court again held Act 233 constitutional. 496 So.2d at 281. In its discussion the Court stated:
The purpose of the amendment at issue in this case is to effect the return of property taken or sold under distress to the state for a public purpose when that purpose has become extinct in order to prevent windfall to the state or to restrict the state to the gains it could reasonably expect from the acquisition of the property. Accordingly, we conclude that the framers and the people who adopted the amendment did not intend that any parcel or undivided interest of property should be retained by the state once the legislature declares extinct the public purpose for its acquisition and orders it returned to private ownership (footnote omitted).
Id. at 298. The intent of Act 233 of 1984, which implemented La. Const. Art. VII, § 16(B), was to insure that the Levee Board did not retain the expropriated property and its mineral royalties after the effective date of the act.
The Levee Board argues that Act 819 of 1985 repealed Sections 2, 4 and 5 of Act 233 because it amended and reenacted those sections. The Board focuses on the deletion of phrases in Sections 2 and 5 relating to the mineral lessee's right to negotiate contracts with the DNR, the settlement and distribution of funds for successful applications, and DNR's payment of royalties to appropriate applicants.
However, Section 3 of Act 233 was not amended by Act 819 and Act 233 continued to require the Levee Board to provide the DNR secretary with a thorough accounting of all revenues from the property. Act 233 after Act 819 of 1985 required a Levee Board accounting of revenues and royalties earned after June 29, 1984 which had to be made available to the applicants. The plaintiffs stated a cause of action as to the availability of the statutorily ordered accounting by the Levee Board even if accounting is defined in the most restrictive sense.
The only possible explanation as to why Section 3 remained unchanged was that the legislature intended that there would be a tabulation of royalties. Regardless of whether an "accounting" encompasses the settling and distribution of funds, the legislators had no need to order an accounting unless there was to be an equitable distribution to the applicants whose properties' revenues were collected by the Levee Board from 1984 to 1991 or 1992. Although the DNR's authority to establish procedures to settle and distribute funds was deleted, Section 3 subsequent to Act 819 still ordered the Levee Board to provide an accounting of revenues. Section 5 no longer entitled a mineral lessee to pay the DNR; however, the lessee's continued payments to the Levee Board had to be included in the Board's accounting. The fact that the DNR was no longer given the responsibility to collect revenues, negotiate contracts and distribute monies after Act 819 of 1985 did not mean that the successful applicants were not entitled to those royalties which would be included in the Levee Board's accounting.
Section 2 of Act 819 retained the statement that the DNR secretary shall develop procedures to begin implementation of the provisions by January 1, 1985 even though the act was not approved until July 22, 1985. Section 4 of Act 819 was almost entirely new and required that the DNR certify the valid applications to the Levee Board, which was to to take action within 60 days of receipt of the certification to return ownership of the property. The procedures related to the transfer of title and the legislators intended to return title to the property to the applicants expeditiously. Yet the Levee Board argues that the intent was to repeal sections of Act 233 and allow the Board to continue to collect sizable mineral royalties from 1984 to 1991 and 1992 until titles were transferred to the owners.
Act 233 intended to return those lands and revenues to the owners and their heirs, and *159 nothing in Act 819 clearly shows a different intent. Act 819's preamble or title sets out as its purpose to amend and reenact Act 233 relative to the return of certain property known as the Bohemia Spillway. There is no express repeal of any language or section of Act 233 and implied repeals are not favored. Act 819 retained the order that the Levee Board provide an accounting. We agree with the Supreme Court that the framers or the voters who ratified the amended La. Const. Art. VII, § 14(B)(4) did not intend for the Levee Board to retain ownership of lands once the legislature declared that they were no longer needed for a public purpose. See Board of Commissioners of Orleans Levee District, 496 So.2d at 281. Act 819 contains no declaration that the former owners were not entitled to the revenues until title passed although such a statement could have been included. Act 819 did not impliedly repeal Sections 2, 4, and 5 of Act 233.
Throughout years of court challenges the Levee Board received millions of dollars in mineral royalties from Bohemia Spillway lands. Equity dictates that the Levee Board, whose attack on Act 233 delayed transfers of title for years, should not be allowed to benefit from its decision not to follow the legislative mandate.[7]
The trial court erred by maintaining the Levee Board's exception of no cause of action. The plaintiffs stated a cause of action for declaratory and money judgments relating to an accounting and revenues collected by the Levee Board from June 29, 1984 to the dates in 1991 and 1992 when individual titles were transferred on equitable as well as legal grounds.
The judgment maintaining the exception of no cause of action is hereby reversed and the matter remanded for further proceedings.
REVERSED; REMANDED.
NOTES
[1] This appeal is one of three pending appeals that involve judgments by trial courts which maintained the Levee Board's exceptions of no cause of action as to actions by Bohemia Spillway owners or their heirs. The other two cases are Riley v. Riley (94-CA-2226), 680 So.2d 169 and Haspel & Davis Milling & Planting Co. Ltd. v. Board of Levee Commissioners of the Orleans Levee District (95-CA-0233), 680 So.2d 159. Opinions in those cases will be rendered simultaneously with this opinion.
[2] We note that Act 847 of 1992, which added to Section 1 an order for return of lands acquired by "act of convenience ... including but not limited to sale or transfer subsequent to an adjudication for the nonpayment of taxes," has been held to violate the express prohibition of La. Const. Art. VII, § 14(A) prohibiting donations of state properties because there is no exception for transfers due to non-payment of taxes in § 14(B). See Board of Commissioners of Orleans Levee District v. Gomez, 621 So.2d 826 (La.App. 1st Cir. 1992), reh'g granted in part and amended, 621 So.2d 837 (1st Cir.1993), writ denied, 623 So.2d 1282 (La. 1993).
[3] The correspondence improperly sent to our Clerk of Court subsequent to oral argument was not considered by the panel.
[4] The legislature used almost identical language in Sections 2, 3, 4 and 5 of Act 245 of 1985, which ordered the return of expropriated property from the Board of Levee Commissioners of the Buras Levee District. See generally Angelo v. Ales, 94-0320 (La.App. 1 Cir. 12/22/94), 649 So.2d 1042, writ denied, 95-0176 (La.3/17/95) 651 So.2d 274.
[5] The Louisiana Supreme Court utilized the concept of equitable title to render justice for a plaintiff who had applied for the necessary patent and warrant for land that she was entitled to have. The Court held that equitable title vested in the plaintiff at the time that she applied for the patent even though the state had legal title and she was entitled to the mineral revenues collected from the date of the application to the date the patent was issued. See Douglas v. State, 208 La. 650, 23 So.2d 279 (1945). The Levee Board argues that Douglas is distinguishable because here the plaintiffs had not filed their applications; however, the Board's legal attacks on the act prevented the application process for years.
[6] The Louisiana Supreme Court has held that Act 676 of 1979, which amended Act 314 of 1978, could not retract the benefit of the fair market value rate of compensation for appropriated property in suits pending on July 10, 1978 as set out in the earlier act. The Court held that the landowners had a vested right to that rate as of the effective date of Act 676. Terrebonne v. South Lafourche Tidal Control, 445 So.2d 1221 (La. 1984). However, here the crux of the case is whether the plaintiffs' right to the lands vested on the effective date of Act 233 of 1984 and gave them the right to royalties.
[7] This Court has held that Bohemia Spillway landowners or successors who sought reimbursement for the revenues from 1924 to 1992 did not state a cause of action against the Levee Board based on its acts of expropriation as tortious. This Court held that Act 99 of 1924 authorized the expropriations and at that time the Levee Board was immune by virtue of sovereign immunity. Henry v. State, Orleans Levee District, 94-0658 (La.App. 4 Cir. 11/30/94), 646 So.2d 519. That case is not relevant.