738 So.2d 1142 (1999)
Anthony L. VOGT, et al. and Allen M. Edgecombe, et al.
v.
BOARD OF COMMISSIONERS OF the ORLEANS LEVEE DISTRICT, et al.
No. 98-CA-2379.
Court of Appeal of Louisiana, Fourth Circuit.
June 9, 1999.
*1143 Philip A. Gattuso, Gretna, Louisiana and Mack E. Barham, Robert E. Arceneaux, Travis L. Bourgeois, Barham & Arceneaux, New Orleans, Louisiana, Counsel for Plaintiffs/Appellants.
Frank J. Uddo, Anthony J. Milazzo, Jr., Basile J. Uddo, Metairie, Louisiana, and Gary G. Benoit, Emile W. Schneider, Board of Commissioners of the Orleans Levee District New Orleans, La., and Paul J. Mirabile, Wade Webster, New Orleans, Louisiana, Counsel for Defendants/Appellants.
Court composed of Judge WILLIAM H. BYRNES III, Judge DENNIS R. BAGNERIS Sr., Judge Pro Tem. PHILIP C. CIACCIO.
PHILIP C. CIACCIO, Judge Pro Tem.
Defendant, the Board of Commissioners of the Orleans Levee District ("Levee Board"), appeals the trial court judgment granting summary judgment in favor of plaintiffs, Anthony Vogt, et al., and Allen Edgecombe, et al., and dismissing the Levee Board's reconventional demand. Plaintiffs appeal the limitation of interest to that accrued since judicial demand and the denial of their request for attorneys' fees. We affirm.
This case is the latest chapter in the on going litigation involving the Bohemia Spillway. Act 99 of the 1924 Louisiana Legislature authorized the Levee Board to *1144 acquire property, either by purchase, donation or expropriation, for the purpose of creating the Bohemia Spillway. The Levee Board exercised that authority and acquired the properties necessary for construction of the spillway.
In 1984, Article VII, § 14 of the Louisiana Constitution was amended to provide for the return of property, including mineral rights, to a former owner from whom the property had previously been expropriated, or purchased under threat of expropriation when the legislature declared that the public and necessary purpose that originally supported the expropriation had ceased to exist. The amendment also ordered the return of the properties of the former owner under such terms and conditions as specified by the legislature. The amendment stated that the return of such property was not a violation of the Louisiana Constitution's prohibition against donation of property owned by the State or any political subdivision.
Pursuant to this constitutional amendment, the Legislature enacted Act 233 of 1984, which declared that the public purpose of the Bohemia Spillway had ceased to exist and directed the Levee Board "to return the ownership of said property to the owners or their successors from whom the property was acquired by expropriation or by purchase under threat of expropriation." This Act authorized the Department of Natural Resources ("DNR") to determine entitlement to certification for eligibility for return of property. After unsuccessfully attacking the constitutionality of Act 233[1], the Levee Board transferred title to the properties certified by the DNR to the former landowners or their successors in 1991 and 1992. A group of those transferees of property are the plaintiffs in the instant case.
In an earlier lawsuit in this same litigation, the plaintiffs requested a declaratory judgment decreeing ownership of the property, plus fruits and revenues as of June 29, 1984 (the effective date of Act 233 of 1984), an accounting of all revenues from that date, a money judgment for the amount of royalties incorrectly paid to the Levee Board after June 29, 1984, damages double the amount of the royalties and attorneys' fees, and dissolution of the mineral lease on this property held by Bass Enterprises Production Company. The Levee Board filed an exception of no cause of action, which was maintained at the trial court level. On appeal, this Court reversed, holding that "plaintiffs stated a cause of action for declaratory and money judgments relating to an accounting and revenues collected by the Levee Board from June 29, 1984 to the dates in 1991 and 1992 when individual titles were transferred on equitable as well as legal grounds." Vogt v. Board of Levee Commissioners of the Orleans Levee District, 95-1187, p. 18 (La.App. 4 Cir. 9/4/96), 680 So.2d 149, 159. The Levee Board subsequently produced an accounting of revenues received from the subject property from June 29, 1984, totaling $2,853,358.44, and the plaintiffs accepted that accounting.
In the instant action, the plaintiffs filed a motion asking for summary judgment (1) declaring that the Levee Board's interest in the property at issue terminated on June 29, 1984, and that its failure to promptly return the fruits and revenues it received from the property after that date constitutes a wrongful taking and illegal appropriation of the plaintiffs' property; and (2) entering judgment against the Levee Board in the full amount of $2,853,358.44, representing mineral income wrongfully taken by the Levee Board from the plaintiffs and never repaid, with judicial interest from date of receipt by the defendant until restored to the plaintiffs, plus attorneys' fees in the amount of 25% of recovery.
In support of their motion, plaintiffs filed: (1) a memorandum; (2) the May 5, *1145 1997 trial court judgment ordering the Levee Board to provide an accounting; (3) the accounting produced by the Levee Board; (4) a July 30, 1997 letter from a defense attorney to a plaintiffs' attorney regarding the accounting; (5) the certification list from DNR of the Bohemia Spillway claimants for Tracts 71-99; and (6) the affidavit of one of plaintiffs' attorneys regarding attorneys' fees incurred in this matter. In opposition to the motion, the Levee Board filed: (1) a memorandum; (2) copies of the DNR applications filed by plaintiffs; (3) documents from a succession indicating that a Bohemia Spillway ancestor's estate sold its property to raise money without any references to expropriation or threats thereof; (4) a certified copy of a deed executed by the Levee Board indicating that Tract 99 was conveyed to individuals who are not plaintiffs in this action; and (5) the affidavit of the author of the accounting records and calculations.[2] In this same action, the Levee Board filed a reconventional demand seeking the return of property and revenues from transferees whose property was not originally taken by expropriation or threat thereof.
In a judgment signed on January 30, 1998, the trial judge granted the plaintiffs' motion for summary judgment and held that they are not required to prove that the property to which they have title was taken by expropriation or by purchase under threat of expropriation. Judgment was rendered in favor of plaintiffs and against the Levee Board in the amount of $2,853,358.44, together with judicial interest from date of demand until paid. The trial judge denied plaintiffs' claim for attorneys' fees.
In reasons for judgment issued on January 30, 1998, the trial judge summarized the Levee Board's position as follows: "The Levee Board disputes the plaintiffs' title to the land at issue and requests this Court require each plaintiff to establish that the property to which they claim ownership was taken either by expropriation or threat of expropriation." The judge stated that the Louisiana Constitution authorized the return of the lands at issue and the legislature set the terms and conditions of that return in Act 233 of 1984, which authorized the Department of Natural Resources to adjudicate entitlement to certification for eligibility for return of lands. The judge stated that under Act 233, the Levee Board was ordered to return any land to any owner certified by the DNR.
The trial judge stated that if the Levee Board disputed the DNR's certification, it could have sought judicial review of the certification or resisted transferring the property.[3] The judge said that the Levee Board did not take any steps to challenge the certification of the landowners that are plaintiffs in this case. In fact, as noted by the judge, the Levee Board issued Acts of Transfer of Immovable Property Without Warranty to the plaintiffs. These Acts of Transfer or quit-claim deeds prepared by the Levee Board acknowledged and declared that the property being returned "was acquired by expropriation or by purchase under threat of expropriation." Therefore, the trial judge found that the *1146 Levee Board is estopped from attacking the title that they gave to plaintiffs and plaintiffs are not required to establish that the property to which they were given title was taken by expropriation or by purchase under threat of expropriation.
The judge held that plaintiffs are entitled to the revenues stated in the accounting produced by the Levee Board, together with judicial interest from date of demand until paid. The trial judge found that the Levee Board's actions in this matter did not constitute a wrongful taking prohibited by the Louisiana and United States Constitutions and therefore plaintiffs are not entitled to an award of attorneys' fees.
Plaintiffs filed a motion for new trial arguing that the judgment incorrectly specified the interest due by the Levee Board. Plaintiffs argue that they should be awarded interest from the date of the Levee Board's diversion of each royalty payment, to be compounded annually. The Levee Board also filed a motion for new trial requesting, among other things, that the money judgment be recalculated to reflect only those revenues to which plaintiffs to this action are allegedly entitled.
The trial judge rendered judgment denying plaintiffs' motion for new trial but granting the Levee Board a new trial from the judgment of January 30, 1998. The judgment was issued on April 17, 1998 but was not signed until July 24, 1998. In the judgment on the motion for new trial, the trial judge specified the individuals that are owed a money judgment and the amount owed to each. The judgment on the motion for new trial also dismissed the Levee Board's reconventional demand. In all other respects, the judgment on the motion for new trial was the same as that of January 30, 1998. The trial judge stated that he adopted his reasons for judgment issued on January 30, 1998 and on April 17, 1998.[4]
In the reasons for judgment issued on April 17, 1998, the trial judge stated that in the motion for new trial, he was faced with the issue of whether the January 30, 1998 judgment provides res judicata effect to the Levee Board as to future claims by unrepresented claimants, whose property would be affected by the judgment. He noted that at least two of the tracts covered by the January 30, 1998 judgment are not owned 100% by plaintiffs in this action and in one tract, no plaintiff in this action owns any interest. He further stated that although plaintiffs do not own 100% of all the tracts involved, they seek to collect 100% of the revenues and assert that defendant will be provided res judicata protection as to those unknown and/or unrepresented co-owners. The trial judge rejected plaintiffs' res judicata argument on the grounds presented but noted that there are procedures available which the Levee Board could comply with and get the type of res judicata protection contemplated by plaintiffs. The judge stated that in the absence of such a procedure, the plaintiffs are entitled to collect only their percentage of the revenues. The plaintiffs and the Levee Board appeal the trial court judgment rendered on July 24, 1998.
The Levee Board appeals the granting of summary judgment in favor of plaintiffs and the dismissal of its reconventional demand. The plaintiffs appeal the limitation of interest to that accrued since judicial demand and the denial of their request for attorneys' fees.
In Waller v. American Seafoods Company, 97-0302, p. 1-2 (La.App. 4 Cir. 10/1/97), 700 So.2d 1306, 1307, writ not considered, 97-2769 (La.1/30/98), 709 So.2d 693, the standard of review for summary judgments was set forth as follows:
Appellate courts must review summary judgments de novo. Act 483 of 1997 amended La. C.C.Pro. art. 966 effective August 15, 1997, and it is to be *1147 applied retroactively as well as prospectively. Kaufmann v. Fleet Tire Service of Louisiana, Inc., 96-2444 (La.App. 4 Cir. 4/2/97), 691 So.2d 811, vacated, 97-1428 (La.9/5/97), 699 So.2d 75 (applying Act 483 of 1997, effective 8/15/97, to judgment rendered prior to the effective date of the Act).
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions such as this. The procedure is favored and shall be construed to accomplish these ends. La. C.C.Pro. art. 966 A(2). A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.Pro. art. 966 B. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden does not require him to negate all essential elements of the adverse party's claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim. La. C.C.Pro. art. 966 C(2).
After review of the record and the applicable law, we conclude that the trial court's ruling was correct but we assign different reasons.
The Levee Board states that the main issue in this lawsuit is whether the mandate to return the property in Bohemia Spillway applies to ancestors of owners who freely sold their property, without threat of expropriation, in arms length transactions for fair market value. The Levee Board argues that it does not and alleges as error the trial court's decision to relieve plaintiffs of their burden of proving that their land was acquired by expropriation or by purchase under threat of expropriation.
According to the Levee Board, its reconventional demand sought the return of property to the Levee Board that had been improperly certified by the DNR. Although the Levee Board challenged the constitutionality of Act 233 of 1984, it did not take any steps to challenge the DNR's certifications prior to executing acts of transfer in favor of the properties' former owners or their successors. The Levee Board claims that it had no standing to challenge the DNR's certifications under the Louisiana Administrative Procedure Act, La. R.S. 49:951 et seq., or to seek judicial review under Act 233; therefore, it should not be precluded from its current challenge of the DNR certifications.
La. R.S. 49:964 states, in pertinent part:
A. Except as provided in R.S. 15:1171 through 1177, a person who is aggrieved by a final decision or order in an adjudication proceeding is entitled to judicial review under this Chapter whether or not he has applied to the agency for rehearing, without limiting, however, utilization of or the scope of judicial review available under other means of review, redress, relief, or trial de novo provided by law ...
B. Proceedings for review may be instituted by filing a petition in the district court of the parish in which the agency is located within thirty days after mailing of notice of the final decision by the agency ...
An adjudication is defined under R.S. 49:951(1) as the "agency process for the formulation of a decision or order." According to the Levee Board, the DNR determinations were not adjudications because the certifications cannot be characterized as "orders" or "decisions" under the Administrative Procedure Act. It cites R.S. 49:951(3), which defines "decision" or "order" as "the whole or any part of the final disposition...of any agency ... required by constitution or statute to be determined on the record after notice and opportunity for an agency hearing ..." *1148 The Levee Board claims that there is no evidence in the record that it was given notice or an opportunity to be heard.
Act 233 of 1984 was amended in 1985 by Act 819. That amendment included the following statement: "Any applicant who is aggrieved by the board's action on the [DNR] secretary's certification may seek judicial review of the board's action by filing suit in the Twenty Fifth Judicial District Court within thirty days of receipt of the written notice provided herein." The Levee Board alleges that it had no standing to attack the DNR certifications under the amended Act 233 because it was not an "applicant" in the certification process.
The plaintiffs argue that the requirements of notice and opportunity to be heard were met in this case and that the certifications of the DNR were adjudications under R.S. 49:964. We agree. Through Act 233 of 1984, the Levee Board had notice that the DNR had been given the task of establishing procedures and guidelines necessary for the implementation of the return of the Bohemia Spillway properties to its former owners or their successors. The Levee Board had the opportunity at that time to contest the certification procedure. In fact, while the DNR was establishing its procedures and guidelines, the Levee Board requested that the DNR promulgate rules providing for complete payment to them for any land returned. See Board of Commissioners of Orleans Levee District v. Department of Natural Resources, 496 So.2d 281 (La. 1986). That action by the Levee Board demonstrates that it had notice and an opportunity to be heard before the DNR issued its certifications.
By decreeing ownership of the properties in question, those certifications constituted a final decision of the DNR in that they were determinative of the rights of the parties. To the extent that the Levee Board was aggrieved by that decision, it had several options available to it upon receipt of the DNR certifications. It could have requested rehearing by the DNR, sought judicial review of this adjudication within thirty days under the provisions of R.S. 49:964, or simply refused to execute the acts of transfer and allowed the applicants to seek judicial review under the amended Act 233. Instead, the Levee Board accepted the certifications of the DNR as to ownership of the property, without objection, and executed notarial acts of transfer declaring that the subject property being transferred "was acquired by expropriation or by purchase under threat of expropriation."
The Levee Board cannot now collaterally attack plaintiffs' titles to the property when it did not directly attack the decision of the DNR when it had an opportunity to do so. The time for the Levee Board to contest the DNR certifications was when they were received. R.S. 49:964 B created a right of judicial review of an administrative agency decision for the limited period of thirty days. That period passed without any action by the Levee Board. At the end of the thirty day period following the Levee Board's receipt of the DNR certifications, the Levee Board's right to judicial review was extinguished and the adjudication of the DNR became final. By its inaction, the Levee Board lost its right to attack the DNR certifications or the acts of transfer passed in reliance on those certifications.
For these reasons, we conclude that the trial judge was correct in granting summary judgment in favor of plaintiffs and in dismissing the Levee Board's reconventional demand.
The next matter to address is the plaintiffs' argument that the trial judge erred in limiting the interest on their award to that accrued since judicial demand. They claim that the Levee Board should be held liable for interest from the date it diverted each royalty payment received by it from the trust or escrow in which said payments were to be held for plaintiffs, and interest should be compounded annually. On the issue of judicial interest, the Levee Board cites a 1997 *1149 amendment to Act 233 of 1984, which states that the rate of interest on monies due by the Levee Board pursuant to the return of Bohemia Spillway property is the annual, average interest rate earned by the board on its income-producing investments during the same time period as determined by the legislative auditor.[5]
We find the provisions in the 1997 amendment to Act 233 of 1984 on the issue of interest to be substantive in nature and therefore not entitled to retroactive application. Furthermore, we do not agree with plaintiffs' argument that the provisions of Act 233 of 1984 mandate that interest be awarded from the date of receipt of each royalty payment. We conclude that the trial judge properly awarded interest from date of judicial demand.
Plaintiffs also argue that the trial judge erred in not awarding them attorneys' fees. They cite La. R.S. 13:5111, which provides that attorneys' fees shall be awarded to a plaintiff when there has been a taking of property by a political subdivision, other than through an expropriation proceeding. In his reasons for judgment, the trial judge stated that plaintiffs were not entitled to an award of attorneys' fees due to his finding that the Levee Board's actions in this matter did not constitute a wrongful taking prohibited by the Louisiana and United States Constitutions. We conclude that the trial judge did not abuse his discretion in failing to award attorneys' fees to plaintiffs.
Accordingly, the trial court judgment is affirmed.
AFFIRMED.
NOTES
[1] See Board of Commissioners of the Orleans Levee District v. Department of Natural Resources, 496 So.2d 281 (La.1986).
[2] The copies of DNR applications filed by plaintiffs and the certified copy of a deed executed by the Levee Board indicating that Tract 99 was conveyed to individuals who are not plaintiffs in this action are not in the appeal record.
[3] The trial judge cites an April 11, 1991 letter from Ron Gomez of the DNR to Richard McGinity, General Counsel of the Levee Board, responding to questions apparently posed by the Levee Board concerning the certification of certain tracts and the certification procedure in general. According to the trial judge, in this letter, Gomez stated that the DNR had no authority to compel, order or demand the Levee Board to return any of the property certified and therefore, if the Levee Board disagreed with the certification findings, it could decline to return the property and let the applicants seek judicial review of the Board's refusal to transfer title. However, this letter is not contained in the appeal record and will not be considered in our review.
[4] The reasons for judgment issued on April 17, 1998 are not in the appeal record. However, because these reasons are attached to both plaintiffs' and defendant's briefs, their content is not disputed.
[5] The Levee Board incorrectly states in its brief that the judgment on the motion for new trial was silent on the issue of interest. That judgment states that interest is owed from date of judicial demand.