TERRI F. LOVE, Judge.
| j This appeal arises from a dispute regarding the ramifications of the Return of Lands Act, which applied to tracts of land *536 once utilized for the Bohemia Spillway. The Orleans Levee District returned tract 78 to the plaintiffs. However, the plaintiffs sought the earnings and interest earned from tract 78. The trial court found for the plaintiffs and awarded revenues, interest on the revenues, statutory interest, and interest from the date of judicial demand. The trial court also reserved any claims for wrongful takings that the plaintiffs might possess.
We find that the trial court did not err in finding that the plaintiffs’ claims were not prescribed. We also find that the trial court did not err in awarding statutory and legal interest. However, we find that the trial court erred by awarding interest as a civil fruit and reverse. As for the reservation of the Plaintiffs’ wrongful takings claims, we find that the trial court did not err and affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

“In 1924, the Louisiana Legislature enacted Act 99, which authorized the Board of Levee Commissioners of the Orleans Levee District ... to acquire by purchase, donation, or expropriation the lands or other property necessary for the | ^construction of the Bohemia Spillway in Plaquemines Parish.” Bd. of Comm’rs of Orleans Levee Dist. v. Gomez, 621 So.2d 826, 827 (La.App. 1st Cir.1992). The Bohemia Spillway “would protect the city of New Orleans from high water in the Mississippi River.” Vogt v. Bd. of Levee Comm’rs of Orleans Levee Dist., 95-1187, p. 5 (La.App. 4 Cir. 9/4/96), 680 So.2d 149, 152. “In 1984, the Louisiana Legislature determined that the Bohemia Spillway was no longer needed and, in Act 233 of 1984, mandated that the Levee Board return to the original owners property acquired by expropriation or by purchase under threat of expropriation in order to create the spillway.” Gomez, 621 So.2d at 827.
Pursuant to Act 233 of 1984, the successions of Carter Eusan[1] and Charles Eusan and the heirs of Joseph Eusan, proceeding by and through Warren H. Eusan,[2] Michelle Eusan,[3] and Ahmed Collins[4] (collectively “Plaintiffs”) sought certification as the heirs of the original vendors of Tract 78 of the Bohemia Spillway by the Department of Natural Resources (“DNR”). Once certified by the DNR the Board of Levee Commissioners of the Orleans Levee District (“OLD”) conveyed[5] Tract 78 to the Plaintiffs[6] on August 9, 2005. The successions of Carter and Charles each received an undivided 33.34% interest in Tract 78. Warren received an undivided 16.68% interest and Michelle and Ahmed each received an undivided 8.32% interest.
The Plaintiffs then filed a petition against the OLD seeking revenues from IsTract 78 of the Bohemia Spillway pursuant to the Return of Lands Act.[7] The Plaintiffs claimed that Act 233 of 1984 *537 granted them a right to reclaim revenues earned by the OLD’s usage of Tract 78 and the Plaintiffs also pursued takings claims, pursuant to 42 U.S.C. Section 1983.
In betwixt the filing of the petition and the present appeal, the trial court ruled in favor of the Plaintiffs on a motion for partial summary judgment. However, this Court remanded the matter on appeal. During that time, the Plaintiffs also filed a wrongful takings action pursuant to 42 U.S.C. § 1983 against the OLD in the United States District Court for the Eastern District of Louisiana. The claims were dismissed as premature without prejudice pending a final determination of just compensation to the Plaintiffs.
Following dismissal from federal court, the Plaintiffs filed a motion to amend their petition and withdraw the wrongful takings claims against the OLD without prejudice and to add the Division of Administration of the State of Louisiana (“DOA”) as a defendant because the Plaintiffs claimed that, as of January 1, 2007, the DOA managed the assets of the OLD. The OLD and DOA then filed answers, and exceptions to the Plaintiffs’ amended petition. Namely, the OLD asserted that the Plaintiffs’ claims were prescribed. The OLD and DOA[8] also filed reconven-tional demands asserting that Tract 78 was not expropriated or conveyed to the OLD under threat of expropriation; therefore, the Return of Lands Act was inapplicable and no property was “taken.”
DOA was dismissed without prejudice on the morning of the trial. After a |4bench trial, the trial court, found for the Plaintiffs. The trial court awarded $996,596.40 in past revenues. The trial court also awarded $366,957.12 in statutory interest pursuant to Act 1364 of 1997. The trial court awarded interest on the revenues, as a civil fruit, in the amount of $365,777.34. In regards to the Plaintiffs’ wrongful taking claims, the trial court ruled that the claims were “reserved.” The trial court also overruled OLD’s exception of prescription. All other claims regarding any other party were dismissed with prejudice. OLD’s timely motion for appeal followed.[9]
OLD asserts that the trial court erred because the Plaintiffs’ claims are prescribed, the Plaintiffs are not entitled to the awarded amounts of interest, and that the trial court erred by reserving the wrongful takings claims.

STANDARD OF REVIEW

Appellate courts review findings of fact with the manifest error or clearly wrong standard of review. Riley v. Reliance Ins. Co., 97-0445, pp. 4-5 (La.App. 4 Cir. 11/19/97), 703 So.2d 158, 162. “We must be cautious not to reweigh the evidence or substitute our own findings, and where there are two permissible views of the evidence, the fact finder’s choice cannot be manifestly erroneous or clearly wrong.” Proctor’s Landing Prop. Owners Ass’n, Inc. v. Leopold, 11-0668, p. 15 (La. App. 4 Cir. 1/30/12), 83 So.3d 1199, 1208. *538 “Reversal of findings of fact on appeal requires that: (1) the appellate court find from the record that no reasonable factual basis exists for the trial court’s finding, and (2) the appellate court determine that the record establishes the finding is clearly wrong or manifestly | ^erroneous.” Harris v. Foche, 05-0664, p. 5 (La.App. 4 Cir. 4/12/06), 930 So.2d 165, 170.
“[T]he standard of review of an appellate court in reviewing a question of law is simply whether the lower court’s interpretive decision is correct.” Olavarrieta v. St. Pierre, 04-1566, p. 3 (La.App. 4 Cir. 5/11/05), 902 So.2d 566, 568. Thus, this requires de novo review. Broussard v. Hilcorp Energy Co., 09-0449; 09-0469, p. 3 (La.10/20/09), 24 So.3d 813, 816.
“Finally, a mixed question of fact and law should be accorded great deference by appellate courts under the manifest error standard of review.” Moore v. Dep’t of Police, 06-1217, p. 3 (La.App. 4 Cir. 1/17/07), 950 So.2d 96, 98.

PRESCRIPTION

The OLD contends that the trial court erred in denying its exception of prescription because the Plaintiffs claims for revenues and/or any interest are prescribed utilizing either a one-year, three-year, or ten-year prescriptive period. The OLD avers that “[b]y waiting over twenty years before pursuing any claim, the Eusans unfairly avoided paying property taxes and otherwise maintaining Tract 78 for over twenty years.”
The Plaintiffs counter that their claims were not prescribed because the Return of Lands Act permitted claimants until June 30, 2007, to file a claim for certification with the DNR.

Interlocutory Judgment

The denial of an exception of prescription is an interlocutory judgment that is generally not subject to appeal. Spencer v. U.S. Fid. & Guar. Co., 454 So.2d 340, 341 (La.App. 4th Cir.1984). However, this rule is inapplicable if irreparable harm will occur. In re Succession of Linder, 05-640, p. 4 (La.App. 5 Cir. | (2/14/06), 924 So.2d 293, 294. Ordinarily, this Court could convert the OLD’s appeal of the prescription issue into an application for supervisory review. Stelluto v. Stelluto, 05-0074, pp. 7-8 (La.6/29/05), 914 So.2d 34, 39. However, there is no adequate remedy on appeal in this case because a trial court ruled on the OLD’s exception of prescription along with the trial on the merits. Therefore, irreparable harm would occur if we did not consider the OLD’s assertions of prescription in the matter sub judice.

Merits

The Louisiana legislature passed Act 233 of 1984 (effective June 29,1984), which provided:
Section 1. Pursuant to authority of Louisiana Constitution Article VII, Section 14(B), the Legislature of Louisiana hereby declares that the public and necessary purpose set forth in Act No. 99 of 1924, which may have originally supported the expropriation of property, or any right of ownership thereto, on the east bank of the Mississippi River in the parish of Plaquemines for the construction of a spillway, known as the Bohemia Spillway, has ceased to exist insofar as it ever may have affected the ownership of property, including mineral rights. The Legislature of Louisiana hereby orders the Board of Levee Commissioners of the Orleans Levee District, the board, to return the ownership of said property to the owners or their successors from whom the property was acquired by expropriation or by purchase under threat of expropriation. Neither the provisions *539 of this Act nor any actions pursuant to this Act shall affect the title to land which was the subject of litigation on the effective date of this Act.
Section 2. The secretary of the Department of Natural Resources shall have rule making and procedure making authority consistent with the Administrative Procedure Act, R.S. 49:950, et seq., for the purpose of establishing procedures and guidelines for the receipt and evaluation of applications, notification of applicants, review of denials by- hearings, relaxation of technical rules of evidence, settlement and distribution of funds for successful application, and any other rules and procedures reasonably necessary for the orderly | ./implementation of the return ordered herein. The secretary shall proceed immediately upon the effective date of this Act with steps necessary for the development and adoption of rules and procedures to begin the implementation of the provisions of this Act by January 1, 1985.
Section 8. The Board of Levee Commissioners of the Orleans Levee District shall provide a thorough accounting to the secretary of the Department of Natural Resources, or his designee, concerning all revenues received from the affected property. The information so provided shall be made available to applicants. The board shall comply with the spirit and letter of the rules and regulations adopted and promulgated by the secretary of the Department of Natural Resources.
Section 4. The secretary of the Department of Natural Resources shall begin steps by January 1, 1985, to notify affected persons.
Section 5. The return of property by the board to the owners or their successors shall be subject to all servitudes and rights-of-way, whether acquired by expropriation or otherwise, or surface or mineral leases, or other valid contracts executed by or with the board prior to the effective date of this Act. Any deed whereby any property is returned shall state that such property is subject to such rights. Any party to a contract in effect on the effective date of this Act with the board concerning property affected by this Act shall be entitled to make payments and give all notices required or permitted under such contract to the secretary until the title to the property affected has been transferred. When such contracts provide for renegotiation of rent between any person and the board, or provide that any person may seek approval by the board, such person shall be entitled to renegotiate such rent or to seek and obtain such approval from the secretary until the title to the property affected has been transferred. Any sum deposited with the secretary pursuant to this Act which represents rent, royalty or other sum attributable to land being returned, shall be paid by the secretary to the appropriate persons.
Section 6. This Act shall become effective upon signature by the governor or, if not signed by the governor, upon expiration of the time for bills to become law without signature by the governor, as provided in Article III, Section 18 of the Constitution of Louisiana.
Approved by the Governor: June 28, 1984.
Haspel & Davis Mill. & Planting Co. Ltd. v. Bd. of Levee Comm’rs of Orleans Levee Dist., 95-0238, pp. 4-5 (La.App. 4 Cir. 9/4/96), 680 So.2d 159, 162-63. See also Historical and Statutory Notes to La. R.S. 30:21.2. Further, Act 1364 of the 1997 Louisiana legislature, amended and reen *540 acted Section 1 of Act 233 of 1984, and included the following provision:
The board [Levee District] shall return to the owners and/or the successors of the owners of such property an amount equal to all revenues produced since June 29, 1984 until paid from property which was acquired by the board by expropriation or by purchase under threat of expropriation. In addition, the board shall pay to such owners and/or the successors interest on such revenues from July 1, 1991 until paid. The rate of such interest shall be the annual, average interest rate earned by the board on its income-producing investments during the same time period as determined by the legislative auditor. (Emphasis added).
Frank v. Bd. of Levee Comm’rs of Orleans Levee Dist., 04-0358, p. 7 (La.App. 4 Cir. 4/6/05), 900 So.2d 1063, 1067. See also Historical and Statutory Notes to La. R.S. 30:21.2. Section 2(d) of Act 130 of 2005, provided that “[n]o property or mineral rights provided for in this Act shall be required to be returned to any person who has not filed a claim with the department for certification as an owner by June 30, 2007” and the provision became effective on June 22, 2005, when signed by the governor. See Historical and Statutory Notes to La. R.S. 30:21.2.
“Liberative prescription is a mode of barring of actions as a result of inaction for a period of time.” La. C.C. art. 3447. The Louisiana Supreme Court stated that “[t]he fundamental purpose of prescription statutes is to afford a defendant economic and psychological security if no claim is made timely and to protect the defendant from stale claims and from the loss or non-preservation of relevant proof.” Cichirillo v. Avondale Indus., Inc., 04-2894, p. 9 (La.11/29/05), 917 So.2d 424, 430. “ ‘[T]he legislature may create, shorten, lengthen or abolish 19prescriptive periods at its discretion.’ ” Fishbein v. State ex rel. Louisiana State Univ. Health Sciences Ctr., 04-2482, p. 15 (La.4/12/05), 898 So.2d 1260, 1270, quoting Picone v. Lyons, 601 So.2d 1375, 1377 (La.1992).
This Court held that the intent of the Return of Lands Act was to “insure that the Levee Board did not retain the expropriated property and its mineral royalties after the effective date of the act.” Haspel, 95-0233, p. 16, 680 So.2d at 168. This Court further expounded that “nothing in Act 233 evidenced an intent that the Levee Board retain the property and the revenues generated during the application process.” Vogt, 95-1187, p. 15, 680 So.2d at 157. While the Louisiana Supreme Court stated that “[t]he fundamental purpose of prescription statutes is to afford a defendant economic and psychological security if no claim is made timely and to protect the defendant from stale claims and from the loss or non-preservation of relevant proof,” the OLD was aware of the time in which claimants to the Bohemia Spillway property could file a claim with the DNR. Cichirillo v. Avondale Indus., Inc., 04-2894, p. 9 (La.11/29/05), 917 So.2d 424, 430.
The Plaintiffs and the OLD stipulated that they filed their claim with the DNR on December 15, 2004, received final certification on June 3, 2005, and filed their initial petition on February 9, 2006. Although the OLD asserts that the Plaintiffs’ claims were subject to at least a one-year prescriptive period applicable to del-ictual actions,[10] the Plaintiffs’ right to assert a claim to the revenues from Tract 78 did not exist until they were certified as the owners of Tract 78 on June 3, 2005. *541 Their petition was filed within one year of being certified as the owners by the DNR. This interpretation of the facts is also demonstrated in the fact that the 110United States District Court for the Eastern District of Louisiana dismissed the Plaintiffs’ takings claims as premature pending a final determination of just compensation to the Plaintiffs, which required certification by the DNR.
The OLD repeatedly attempts to fault the Plaintiffs for waiting until 2004 to apply for certification with the DNR. The Plaintiffs cannot be penalized for complying with a legislatively mandated time-line.[11] Further, the OLD asserts that the portion of the Return of Lands Act that granted the Plaintiffs until June 30, 2007, did not include a provision regarding the timeline or constraints on obtaining the revenues collected since June 29, 1984. Again, however, the Plaintiffs had no claim to the revenues from Tract 78 unless and until they were certified by the DNR as the current owners of Tract 78. Therefore, we find the OLD’s assertions regarding prescription[12] are without merit and affirm the trial court’s $996,596.40 award of revenues.[13]

INTEREST

The OLD contends that the Plaintiffs were not entitled to the three types of interest awarded to the Plaintiffs by the trial court.

Civil Fruits

The OLD asserts that the trial court erred in awarding the Plaintiffs $865,777.34 as the interest on revenues from 1984 to 1991, which the trial court referred to as civil fruits. To support this contention, the OLD relies upon Frank and Vogt v. Bd. of Comm’rs of Orleans Levee Dist., 98-2379 (La.App. 4 Cir. 6/9/99), 738 So.2d 1142.
| nThe Plaintiffs contend that the award of interest, as prayed for, as a civil fruit is legally sound.
“In the absence of rights of other persons, the owner of a thing acquires the ownership of its natural and civil fruits.” La. C.C. art. 483. “Civil fruits are revenues derived from a thing by operation of law or by reason of a juridical act, such as rentals, interest, and certain corporate distributions.” La. C.C. art. 551. (Emphasis added). “The court shall award interest in the judgment as prayed for or as provided by law.” La. C.C.P. art. 1921. The Plaintiffs sought “interest on the royalties, rents and profits collected by the OLD attributable to Tract 78 from June 29,1984 through June 30,1991.”
The trial court relied upon the provisions of the Louisiana Civil Code regarding civil fruits and stated that Vogt and Frank did “not assist the court in its analysis.” Although La. C.C.P. art. 1921 provides that the “court shall award interest” prayed for, this Court held that a plaintiff was not entitled to the civil fruits of their property formerly contained in the Bohemia Spillway. Frank, 04-0358, p. 7, 900 So.2d at 1068. This Court stated that the trial court in Frank did not err in denying the civil fruit interest award, because of the “lack of any authorization in Act 233 of *542 1984 for the type of interest award calculations suggested by plaintiff.” Id. This Court also based its holding in Frank upon our previous ruling in Vogt. Therefore, we find that the trial court committed a reversible error in awarding $365,777.34 in interest on revenues from 1984 to 1991, based on this Court’s interpretations of the Return of Lands Act and reverse.

112Statutory Interest

The OLD maintains that the Plaintiffs are not entitled to statutory interest from 1991 to 2005 for two reasons: 1) the Return of Lands Act was amended to repeal the interest provision prior to the Plaintiffs filing suit and 2) the Plaintiffs did not provide interest rates as calculated by the legislative auditor.
The Plaintiffs contend that they are entitled to statutory interest pursuant to Act 1364 of 1997, which included the following provision to Section l(b)(ii) of Act 233 of 1984, prior to the previously discussed deletion:
The board shall return to the owners and/or the successors of the owners of such property an amount equal to all revenues produced since June 29, 1984 until paid from property which was acquired by the board by expropriation or by purchase under threat of expropriation. In addition, the board shall pay to such owners and/or the successors interest on such revenues from July 1, 1991 until paid. The rate of such interest shall be the annual, average interest rate earned by the board on its income-producing investments during the same time period as determined by the legislative auditor. (Emphasis added).
First, the OLD avers that the Louisiana Legislature repealed the portion of the Return of Lands Act that provided for the award of statutory interest with section 1 of Act 130 of 2005, which was enacted seven months before the Plaintiffs filed suit. Therefore, the OLD asserts that the Plaintiffs had no vested right to statutory interest.
The OLD claims that the trial court erred in awarding statutory interest because the Plaintiffs did not file suit until after the interest provision was repealed by the Louisiana Legislature. However, the trial court found that the Plaintiffs were entitled to statutory interest as of June 3, 2005, when the DNR certified them as owners of Tract 78. Therefore, the Plaintiffs “had a vested and accrued cause of | iaaction for this statutory interest prior to the enactment of Act 130 of 2005, which removed this interest provision.” The trial court relied upon Austin v. Abney Mills, Inc., 01-1598 (La.9/4/02), 824 So.2d 1137 and Walls v. Am. Optical Corp., 98-0455 (La.9/8/99), 740 So.2d 1262 for the holding. Both Louisiana Supreme Court cases relied upon by the trial court state that:
If a party acquires a right to assert a cause of action prior to a change in the law, that right is a vested property right, protected by the due process guarantees. If retroactive application of the law would divest that party of such a vested right, then retroactive application could be constitutionally impermissible. Cole v. Celotex, 599 So.2d [1058] at 1061 [(La.1992)]. “Once a party’s cause of action accrues, it becomes a vested property right that may not constitutionally be divested.” Cole v. Celotex, 599 So.2d at 1063 (citing Crier v. Whitecloud, 496 So.2d 305, 308 (La.1986); Faucheaux v. Alton Ochsner Med. Found. Hosp. & Clinic, 470 So.2d 878, 879 (La.1985); Lott v. Haley, 370 So.2d 521, 524 (La.1979); Burmaster v. Gravity Drainage Dist. No. ¾ 366 So.2d 1381, 1387 (La.1978); Marcel v. Louisiana State Dep’t of Public Health, 492 So.2d 103, 109-10 (La.App. 1st Cir.), writ denied, 494 *543 So.2d 334 (La.1986)). Therefore, “statutes enacted after the acquisition of such a vested property right ... cannot be retroactively applied so as to divest the plaintiff of his vested right in his cause of action because such a retroactive application would contravene the due process guaranties.” Cole v. Celotex, 599 So.2d at 1063 (quoting Faucheaux v. Alton Ochsner Med. Found. Hosp. & Clinic, 470 So.2d 878, 879 (La.1986)).
Walls, 98-0455, 740 So.2d at 1268-69. “Once a cause of action accrues, a party has a vested right in the cause of action that a new substantive law cannot take away.” Anderson v. Avondale Indus., Inc., 00-2799, p. 6 (La.10/16/01), 798 So.2d 93, 99. Thus, in order to receive statutory interest, the Plaintiffs must have acquired a vested right prior to the repealing of the interest provision. Walls, 98-0455, 740 So.2d at 1269.
In Walls, the Court reasoned that the vested right for a wrongful death action 114did not exist until Mr. Walls’ death. Walls, 98-0455, 740 So.2d at 1270. Likewise, the Plaintiffs’ vested right to seek statutory interest did not exist until the DNR certified them as owners of Tract 78 on June 3, 2005, which then permitted the Plaintiffs to seek redress pursuant to the Return of Lands Act. Accordingly, the Plaintiffs’ right accrued prior to Act 130 of 2005, effective on June 22, 2005, which repealed the provision regarding the entitlement to statutory interest.
OLD relies upon Intracoastal Pipe Serv. Co., Inc. v. Assumption Parish Sales & Use Tax Dep’t., 563 So.2d 863, 864 (La.1990) and Buckbee v. Aweco, Inc., 626 So.2d 1191, 1193 (La.App. 3rd Cir.1993). However, Intracoastal and Buckbee dealt with legal interest as opposed to statutory interest. Therefore, we find the trial court correctly interpreted the jurisprudence and hold that the OLD’s argument against the award of statutory interest regarding statutory amendment lacks merit.
Second, the OLD’s argument regarding the interest rates is misplaced. In lieu of live testimony or documentary evidence at trial, all parties submitted two joint stipulations. The parties stipulated to the average interest rates earned from 1991 to 2006 by the OLÍ). The parties also stipulated that if the trial court determined that the Plaintiffs were entitled to statutory interest based on the revenues of $996,596.40, then the Plaintiffs were entitled to $366,957.12 in statutory interest. “[T]he Louisiana Supreme Court has acknowledged that ‘[i]t is well established that a stipulation has the effect of a judicial admission or confession, which binds all parties and the court.’” Peters v. Greyhound Lines, Inc., 10-0969, p. 5 (La. App. 4 Cir. 11/17/10), 52 So.3d 229, 232, quoting Becht v. Morgan Bldg. & Spas, Inc., 02-2047, p. 5 (La.4/23/03), 843 So.2d 1109, 1112. See also La. C.C. art. 1853. Therefore, we find that the OLD’s assertion that the |1Binterest rates were not calculated by the legislative auditor lacks merit, due to the joint stipulation, and affirm.

Legal Interest

The OLD contends that the Plaintiffs are not entitled to legal interest from the date of judicial demand because the award is not legislatively authorized. Additionally, the OLD claims that legal interest may be awarded if the one-year prescriptive period applies to their claims pursuant to La. R.S. 13:4203. “Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, ‘ex delic-to’, which may be rendered by any of the courts.” La. R.S. 13:4203.
Conversely, the Plaintiffs assert that legal interest may be awarded when prayed for and that La. R.S. 13:4203 man *544 dates the award of legal interest in tort cases whether prayed for or not. We agree. “The court shall award interest in the judgment as prayed for or as provided by law.” La. C.C.P. art. 1921. See also Travelers Indem. Co. v. Reserve Ins. Co., 364 So.2d 1041, 1048 (La.App. 1st Cir.1978). Additionally, this Court affirmed a trial court’s award of legal interest from the date of judicial demand in two separate cases regarding the Bohemia Spillway. Frank, 04-0358, pp. 7-8, 900 So.2d at 1068; Vogt, 98-2379, 738 So.2d at 1149. Therefore, we find that the OLD’s assertion lacks merit and affirm the award of legal interest.

TAKINGS CLAIMS

The OLD asserts that the trial court erred by reserving the Plaintiffs’ “takings” claims under Louisiana or federal law and then dismissing its reconventional demand regarding the “takings” claims with prejudice.
|1fiThe Plaintiffs counter that their takings claims are premature for adjudication because the United States District Court for the Eastern District of Louisiana previously held that the claims regarding wrongful takings were premature until a determination of just compensation was made and the Levee District failed to pay that compensation. We agree.
The trial court stated:
[ejxercising the discretion granted to it in Louisiana Code of Civil Procedure Article 1871, the Court declines to enter declaratory judgments in these cases on the “takings” issue.
The trial court then reserved the Plaintiffs’ “takings” claims pursuant to La. R.S. 13:4232, which arise under the Constitution of the United States and the Louisiana Constitution. The trial court’s judgment reserved claims
including but not limited to federal claims which could be asserted pursuant to 28 U.S.C. Section 1983 and/or state claims which could be asserted pursuant to La. R.S. 13:5111, if any such claims or causes of action are ripe, are reserved to the Plaintiffs pursuant to the provisions of La. R.S. 13:4232.
Trial courts are granted discretion when deciding whether to grant declaratory judgment relief because the Louisiana Code of Civil Procedure provides that the court “may declare rights, status, and other legal relations whether or not further relief is or could be claimed.” La. C.C.P. art. 1871. There are also exceptions to the application of res judicata, as noted by the trial court. La. R.S. 13:4232 provides, in pertinent part, that:
A. A judgment does not bar another action by the plaintiff:
(1) When exceptional circumstances justify relief from the res judicata effect of the judgment;
(2) When the judgment dismissed the first action without prejudice; or,
I iv(3) When the judgment reserved the right of the plaintiff to bring another action. (Emphasis added).
OLD relies upon Frank and Vogt for the assertion that this Court has twice found that the taking of land for the Bohemia Spillway did not constitute an unlawful taking under state or federal law. However, neither Frank nor Vogt examined the legal accuracy of the trial courts’ holdings regarding the “takings” claims. Instead, this Court addressed the trial courts’ award or refusal to award attorneys’ fees based upon a wrongful takings claim. Frank, 04-0358, pp. 4-6, 900 So.2d at 1066-67; Vogt, 98-2379, 738 So.2d at 1149. Therefore, we find the OLD’s argument is misplaced.
As the United States District Court for the Eastern District of Louisiana *545 iterated, the Plaintiffs are unlikely to file a claim for a wrongful taking unless and until the OLD refuses to pay the monies awarded to the Plaintiffs. Accordingly, we find that the trial court did not err in reserving the Plaintiffs’ claims for a wrongful taking, as the claims have not yet arisen and affirm.[14]

DECREE

For the above-mentioned reasons, we find that the trial court did not err in finding that the plaintiffs’ claims were not prescribed. We also find that the trial court did not err in awarding statutory and legal interest. However, we find that the trial court’s award of interest as a civil fruit conflicts with this Court’s interpretation of the Return of Lands Act and reverse. As for the reservation of the Plaintiffs’ wrongful takings claims, we find that the trial court did not err and affirm.
AFFIRMED IN PART; REVERSED IN PART

. Eusan was also referred to as Ursin.

. Warren Eusan is son of Joseph Eusan.

. Michelle Eusan is the granddaughter of Joseph Eusan.

. Ahmed Collins is the great-grandson of Joseph Eusan.

. The conveyance was recorded on August 25, 2005.

. The conveyance states that the "Grantor does by these presents quit-claim, grant, convey, transfer, assign, set over, abandon and deliver....”

. Carter, Charles, and Joseph inherited Tract 78 through a judgment of possession from their parents' succession on July 8, 1925. Carter, Charles and Joseph conveyed Tract 78 to OLD on August 15, 1925, and the conveyance was recorded on August 25, 1925.

. The DOA did not specify its claims for a reconventional demand in its "ANSWER, EXCEPTIONS AND RECONVENTIONAL DEMAND.”

. The present matter was consolidated before the trial court and with another pending appeal with this Court, In re: Isabelle Stevens Conner v. Bd. of Levee Comm’rs of the Orleans Levee Dist., 2011-CA-l 104. However, Conner, was settled and dismissed, which resulted in the appeals being deconsolidated and the Conner record being separated from the record in present case. This Court issued an order permitting us to consider the contents of the Conner record, as all of the parties relied upon the consolidated record when authoring their appellate briefs.

. Art. 3492. Delictual actions, provides in pertinent part:
Delictual actions are subject to a liberative prescription of one year.

. When the Plaintiffs filed suit, Act 130 of 2005 provided that Bohemia Spillway claimants file for certification with the DNR by June 30, 2007.

. The holding refers to the OLD’s assertions as it relates to one-year, three-year, and ten-year prescription.

.This amount was provided in the joint stipulation to prior to trial for the time period of June 29, 1984, to August 8, 2005. Therefore, the OLD did not contest the amount. The OLD’s assertions against the award rested solely on claims of prescription.

. This Court also notes that the trial court erroneously included the OLD's reconventional demand in the judgment dismissing all other claims with prejudice. However, if and when the Plaintiffs file a wrongful takings claim, the OLD will be entitled to present a defense.