| LAKEFRONT MANAGEMENT AUTHORITY | * | NO. 2021-CA-0102 |
|---|---|---|
| | * | |
| VERSUS | * | COURT OF APPEAL |
| | * | |
| J & J PARTNERS, L.L.C. | * | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-08075, DIVISION "14/F"
Honorable Jennifer M Medley,
\* \* \* \* \* \*
**Judge Daniel L. Dysart**
\* \* \* \* \* \*
(Court composed of Judge Terri F. Love, Judge Daniel L. Dysart, Judge Sandra Cabrina Jenkins)

*JENKINS, J. CONCURS IN THE RESULT WITH REASONS.*

David Jefferson Dye
1415 Esplanade Ave.
New Orleans, LA 70116

Gerard George Metzger
GERARD G. METZGER, APLC
829 Baronne Street
New Orleans, LA 70113

    COUNSEL FOR PLAINTIFF/APPELLANT

Joseph R. Ward, Jr.
WARD & CONDREY, LLC
438 S New Hampshire St.
Covington, LA 70433

Randy George McKee
MCKEE LAW FIRM, LLC
1100 Poydras Street
Suite 1475
New Orleans, LA 70163

Robert Joseph Daigre
BURGOS & ASSOCIATES, L.L.C.
3535 Canal Street
New Orleans, LA 70119

COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**

**NOVEMBER 10, 2021**

The plaintiff, Lakefront Management Authority (LMA), appeals from the trial court's denial of the LMA's petition for possession of leased premises and rule to evict tenant filed against defendant, J & J Partners, L.L.C. (J & J Partners). We affirm.

**FACTS AND PROCEDURAL HISTORY**

On November 4, 1994, J & J Partners, represented by John Dane, entered into a 25-year lease with the former Board of Commissioners of the Orleans Levee District for the property with the municipal address of 7412 Lakeshore Drive in New Orleans, Louisiana and located along the New Basin Canal. Concerning the term of the lease, paragraph 2 provides:

> This lease is for a term of twenty-five (25) years beginning on August 1, 1994 and ending on July 31, 2019. Further, provided lessee shall spend the sum of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) for permanent improvements located on the property, the term of the lease shall be extended an additional twenty-five years from July 31, 2019.

The leased premises (where there was a 60 + year old metal building) were initially used as an office building. In 1999, the management and ownership of J & J Partners was assumed by Frank D'Amico, Jr. The property suffered severe damage during Hurricane Katrina in 2005. Not

1

only was the building condemned by the City of New Orleans, but the City also blocked access to this property and others located along the New Basin Canal. J & J Partners continued to pay rent during this time.

The lease agreement provides that if the lessee intends to rebuild the premises after they are damaged by "fire, the elements, unavoidable accident or other casualty" then re-construction must be "vigorously pursued." After having the Katrina damages estimated by his insurer, Mr. D'Amico decided to rebuild. Mr. D'Amico approached the LMA about getting the appropriate approval as required by paragraph 9 of the lease agreement, but was told that the agency was overwhelmed by other property loss issues and he was free to rebuild as he saw fit. After obtaining the proper permits from the City, Mr. D'Amico proceeded to rebuild and re-purpose the building and the adjacent open space as an event venue. Mr. D'Amico estimated that he spent over $800,000.00 on improvements to the property; these included rebuilding the foundation piers, rebuilding the interior of the building (from the shell), and rebuilding the courtyard area.

Management and control of J & J Partners was assumed by Cesar Burgos in July of 2015. In connection with his purchase of J & J Partners, Mr. Burgos obtained a 20 year mortgage from FNBC Bank. The bank had the property appraised and it was valued at $910,000.00. The bank reviewed the documentation evidencing expenses made and was satisfied that over $500,000.00 in permanent improvements had been made to the property. Between 2016 and 2018, Mr. Burgos continued to operate the premises as an event venue and made additional permanent improvements to the property in an amount exceeding $200,000.00.

In 2018, FNBC was placed into receivership and Mr. Burgos needed to refinance his mortgage loan. In connection with his refinance loan request, Hancock Whitney obtained an appraisal of the property, which established a fair market value of $1,300,000.00. Hancock Whitney approved the loan but requested some acknowledgement from the LMA that the lease was extended for the second 25 year term. In October of 2018, J & J Partners requested that the LMA acknowledge that the lease term had been extended 25 years pursuant to paragraph 2 of the lease agreement. On October 17, 2018, the LMA indicated that J & J Partners was required to make a formal request for the extension and added that it would have to be board approved. Mr. Burgos submitted a formal letter dated November 16, 2018. On November 26, 2018, the LMA had an appraisal on the subject property done in part to address the "highest and best use" for the property.

In February of 2019, the LMA's legal counsel advised Mr. Burgos that "permanent improvements" did not include " . . . repairs or replacement of systems in the building, such as replacement of an HVAC system, and also do not include repairs made to the buildings after hurricanes, such as Katrina . . ." Mr. Burgos belied that this interpretation was wrong and not supported by the plain language of the lease agreement. J & J Partners provided documentation including cancelled checks and invoices along with explanations from Mr. D'Amico, Mr. Burgos and Mr. Burgos' personal assistant, Lee Jin Danielson, backing up the materials supplied. On April 15, 2019, the LMA stated from its initial review it agreed only $88,183.00 was expended on permanent improvements, but $859,539.72 was stated to be "undetermined." On June 27, 2019, the LMA changed its opinion to state

3

that it agreed $170, 046.75 were made in permanent improvements, while $778,733.41 remained "undetermined." Later, at a public meeting, it was revealed by the chairwoman of the LMA, Wilma Heaton, the LMA had determined that $460,000.00 had been made in permanent improvements. This was confirmed by the LMA's long-time real estate consultant, Albert Papalardo.

Although some further discussions took place between the parties, they were unable to agree that the lease had been extended to the second term or a new lease. Thereafter, the LMA brought a summary proceeding for possession and to evict against J & J Partners. J & J filed a verified answer and a reconventional demand, which the trial court did not address.

A hearing took place over the period of January 13-20, 2021. At the hearing, J&J Partners presented two experts, a CPA (Lori Leal) and an architect (John Williams) to provide evidence as to how the term "permanent improvement" is defined in accounting and commercial real estate development and construction. The CPA and the architect also opined on whether the documentation provided proved that J&J Partners had met the $500,000.00 threshold. Contrary to LMA's expert, these two experts reviewed the documentation, questioned Mr. D'Amico and Mr. Burgos about the expenditures and each inspected the premises before rendering any opinion. The LMA's expert architect Paul Dimitrios never visited the site and also gave conflicting valuations of the permanent improvements made; he initially found only $87,000 in permanent improvements, but in a later email to the LMA board president he conceded that the figure was around $460,000.00. He testified that he actually agreed with his initial estimate.

4

On February 1, 2021, the trial court rendered judgment denying the petition for possession and the rule to evict accompanied by written reasons. It is from this judgment that the LMA now appeals.

**DISCUSSION**

On appeal, the LMA raises the following assignments of error: (1) the district court erred as a matter of law when the court failed to apply Louisiana law to determine the meaning of the concept of permanent improvements as used in the lease agreement; (2) the district court erred as a matter of law when the court failed to find that permanent improvements is a term of art, technical, or established legal meaning under Louisiana law; (3) the district court erred as a matter of law when it did not interpret the provisions in the lease on permanent improvements in light of the other lease provisions on repairs, major repairs and improvements so that each provision was given the meaning suggested by the whole lease agreement; (4) the district court erred as a matter of law by identifying and crediting defendant for repairs and improvements made to defendant's own building as satisfying the lease requirement to make permanent improvements on the leased premises, which thereby rendered the provision useless and ineffective; (5) in the alternative that this appellate court finds the suspensive condition on the extension of the term of the lease ambiguous, the parole evidence introduced established that permanent improvements as used in the lease meant construction of buildings, additions and other constructions on the leased land and did not include repairs, major repairs and improvements to lessee's own building located on the leased land; and (6) the district court

5

abused its discretion and thereby erred when it refused to permit appellant to call rebuttal witnesses during the eviction hearing.

J & J Partners is of the opinion that the LMA's first five assignments of error are all versions of the same basic issue with slight variation and they can all be restated simply as whether the district court erred in finding that the defendant established that it expended a minimum of $500,000.00 in permanent improvements located on the leased property since 1994 and, therefore, by extending the lease of the premises for an additional 25 years.

When the issues presented on appeal raise mixed questions of fact and law, the manifest error standard applies. Further, a judgment based on mixed questions of fact and law should be given great deference by the appellate court under the manifest error standard. *Ursin, ex rel. Eusan v. Bd. Of Levee Com'rs of Orleans Levee Dist.*, 2011-1105, p. 5 (La.App. 4 Cir. 9/26/12), 104 So.3d 534, 538; *A.S. v. D.S.*, 2014-1098, p. 10 (La.App. 4 Cir. 4/8/15), 165 So.3d 247, 254.

In the instant case, the parties agree that the lease agreement does not define the term "permanent improvements." As such, we will endeavor to determine what was meant. Pursuant to La. C.C. **a**rt. 2047, the words of a contract must be given their general prevailing meaning while technical terms must be given their technical meaning when the contract involves a technical matter. J & J Partners presented testimony from CPA Lori Leal and architect John Williams who established that the rebuilding and repurposing of the structure located on the leased land after it was destroyed in Hurricane Katrina constituted a permanent improvement with the exception of expenses that were not permanently affixed to the building.

6

The LMA's expert architect, Paul Dimitrios, testified that he found only $88,183.00 in provided receipts qualified s permanent improvements, with $859,539.00 being "undetermined." He could not testify that the undetermined expenses were not for permanent improvements, but only that he did not know.

Although the LMA makes a rambling argument that the trial court erred in failing to find the term "permanent improvement" is a term of art, technical phrase or established legal term, it provides no legal authority for that proposition.

La. C.C. art. 465 provides that "[t]hings incorporated into a tract of land, a building, or other construction, so as to become an integral part of it, such as building materials, are its component parts." This is illustrated in *Fertitta v. Regions Bank,* 2020-0399, p. 15 (La.App. 4 Cir. 12/9/20), 311 So.3d 445, where a drive-thru facility constructed on leased premises becomes a component part of the immovable. Accordingly, any building constructed on the leased land as well as any improvements incorporated into that building become a component part of the leased premises. In any event, it appears that there was nothing manifestly erroneous in the trial court's finding that over $500,000.00 was expended on permanent improvements to the leased premises.

The LMA's argument that the Louisiana public lease law (La. R.S. 41:1217) and the public airport authority statute (La. R.S. 2:135.1(B)(2)(b)) should apply to this case is disingenuous. The LMA admitted that the lease in question was not let pursuant to La. R.S. 41:2117 or La. R.S. 2:135(B)(2)(b), but under La. R.S. 38:336. Under La. R.S. 38:336, the

7

Levee Board (now LMA) was given broad authority to lease defined property without the restrictions contained in the public leasing law and the public airport authority statute.

In its final assignment of error, the LMA contends that the trial court abused its discretion when it refused to allow the LMA to call rebuttal witnesses. Pursuant to La. C.E. art. 611, a plaintiff may rebut testimony provided by the defense. The purpose of rebuttal evidence is to "explain, repel, counter act, or disprove facts" put into evidence by an opposing party. *Sate v. Hatfield*, 2013-0813, p. 32 (La.App. 4 Cir. 7/2/14), 155 So.3d 572, 593. The court has vast discretion in admitting or refusing to admit rebuttal evidence. *Yokum v. Funky 444 Rhythm and Blues Café*, 2016-1142, p. 27 (La.App. 4 Cir. 5/23/18), 24 So.3d 723, 743.

At the close of the defendant's case, the LMA announced that it intended to call three rebuttal witnesses, who were identified as Louis Capo, Paul Dimitrios, and Wilma Heaton. Both Mr. Capo and Mr. Dimitrios previously testified and Ms. Heaton had not been listed as a potential witness and had been seated in the court room during the trial.

The trial court inquired as to the subject matter of the proposed rebuttal testimony of Mr. Capo and counsel provided a detailed statement of the matters that he intended to go into. The court found the subject matter irrelevant. As to Mr. Dimitrios, the court found that his testimony would be duplicative of the testimony he had previously provided. Regarding Ms. Heaton, the trial court noted that she was not listed as a potential witness and had been present in the court room for the entire trial. The defendant objected to her testimony based on the sequestration rule. La. C.E. art. 615

allows a party to have one corporate representative present and Mr. Capo had been designated as the LMA's representative at the outset of trial and he had remained in the court room throughout the trial. We find no abuse of discretion in the trial court's ruling regarding rebuttal witnesses.

**CONCLUSION**

For the above and foregoing reasons, the trial court's judgment in this matter is affirmed.

**AFFIRMED**